536 A.2d 342

COMMONWEALTH of Pennsylvania

v.

Kevin G. DUMONT, Appellant.

COMMONWEALTH of Pennsylvania

v.

Edward D. DOTT, Appellant.

COMMONWEALTH of Pennsylvania

v.

Allan J. KANAREK, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 1, 1987.

Filed Nov. 23, 1987.

Reargument Denied Jan. 14, 1988.

156

Edward A. McQuoid, Jr., Pittsburgh, for appellants.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before BROSKY, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

These cases require us to consider various issues pertaining to convictions for gambling devices and criminal conspiracy regarding video poker machines located at different establishments in the city of Pittsburgh.

Initially, and of primary importance, we must determine whether discovery of the fact that a video poker machine is equipped with a "knock-off" switch provided probable cause to warrant its seizure as a gambling device *per se,* and if answered in the affirmative, whether a judge of the Pittsburgh magistrates court is authorized to issue a search warrant as process ancillary to the exercise of that court's criminal jurisdiction by the express terms of the several pertinent provisions of the judicial code.

We believe that a determination of the above issues is mandated prior to our addressing the other issues presented, due to the fact that while some cases have been consolidated and one has not, all are companion cases that share in common the need to resolve these questions. Subsequent to our analysis of these matters, we will address those issues which arise from the distinct set of facts peculiar to each appellant's case.

The facts underlying the convictions of Edward G. Dott and Kevin G. Dumont are as follows. During the years of 1984 and 1985, the Pittsburgh Police conducted a broad investigation of the video poker machines in the city of Pittsburgh. Among those establishments investigated were the the Arsenal Bar and Dott's Bar, both within which were located video poker machines. Typically the investigators would enter the establishment in question, obtain quarters from an employee, put four or more quarters in the machine, play one credit (one quarter's worth) on the machine, and then attempt to locate a "knock-off" or "knock-down" device. The presence of this knock-down switch or device in a machine enables excess or free games to be removed and is a standard feature on all machines that are used for gambling purposes. When the investigators detected the presence of a knock-down switch, they would proceed to prepare an affidavit of probable cause in support of an application for a search warrant. In all cases, the presence of a knock-down switch supplied the probable cause requirement in the affidavit.

Thereafter, the applications for search warrants were presented to the police magistrates of the city of Pittsburgh who then issued the search warrants authorizing the police to seize the machines. After seizure, the machines were dismantled and, on all but one of the machines, the police were able to disclose and activate computerized bookkeeping functions on the machine, the presence of which made the machine a gambling device per se as established in *Commonwealth v. Two Electronic Poker Game Machines*, 502 Pa. 186, 465 A.2d 973 (1983).

Having ascertained ownership of the poker machines found in both the Arsenal Bar and Dott's Bar by observing the tax stamp number displayed on each machine as required by the Pittsburgh Business Licensing Code, and then inspecting the business license applications filed under each number, the Commonwealth then charged appellant Dumont (as owner) with violations of 18 Pa.C.S. § 5513. With respect to appellant Dott, he was charged with similar violations of § 5513 due to the fact his name was on the liquor license of Dott's Bar.[1]

Appellants were tried in non-jury trials before the Honorable John J. Feeney and found guilty of violations of 18 Pa.C.S.A. § 5513 (gambling devices, gambling, etc.) and § 903 (criminal conspiracy). Prior to their trials, the Honorable Robert C. Dauer presided over a consolidated suppression hearing where he denied both written and oral pre-trial motions[2] and determined that city of Pittsburgh police magistrates have the power to issue valid search warrants. After post-trial motions were filed and argued, Judge Feeney issued an Order granting appellants new trials. Arrests of judgment were denied. In his Opinion, Judge Feeney concluded that Judge Dauer erred in determining that city of Pittsburgh Police magistrates have the power to issue valid search warrants. The Order was vacated and reconsideration was granted by a tribunal comprised of three judges who reversed the Order granting appellants new trials. Following reversal, appellants were given fines between $500 and $1000; further sentences were not imposed. These appeals followed.

Appellant Kanarek's conviction arose out of the Pittsburgh police's investigation of the Delux Arcade in the city

[1] Another co-defendant, Randy Baden, owner of the Arsenal Bar has not appealed his conviction.

[2] The pre-trial motions disposed of by Judge Dauer other than the jurisdiction of city police magistrates were (1) was there probable cause to issue search warrants in each case; (2) were appellant's constitutional rights violated by the police reviewing the amusement machine licensing records of the city of Pittsburgh to determine ownership of the machines; (3) did the search warrants adequately describe that portion of property or structure to be searched.

of Pittsburgh, where the investigating officer was paid for accumulated credit points on two occasions by the clerk on duty at the time. The presence of a knockdown switch was disclosed in this case by the officer's observation of the clerk pushing a combination of buttons on the video poker machines which resulted in the removal of accumulated game credits. Subsequent inspection of the business license applications filed revealed the machines were owned by United Vending, Inc., of which appellant was president and majority stockholder. Appellant was found to have negotiated the percentage lease with Delux Arcade through an agent of United Vending, Inc., to have executed said lease on behalf of the corporation over the designation "owner, partner, officer", and to have personally applied for the relevant city licenses for the year 1985, the only ones affixed to the machines in early 1986 when the detective received his payoffs. The court below specifically found that under the circumstances, appellant could not hide behind the corporate shield to escape criminal liability.

All appellants maintain the Pittsburgh police lacked probable cause to obtain search warrants with respect to the video poker machines found within the establishments. Appellants assert the allegation set forth in the affidavits (that the poker machines were equipped with knockoff devices for erasing accumulated game were per se gambling devices in terms of the holding of our Supreme Court in *Commonwealth v. Two Electronic Poker Game Machines* ("Electrosport"), *supra.*

■ Under *Electrosport, supra,* the determination of whether a machine is a gambling device per se will turn on the characteristics of the machine when read against the three elements necessary to gambling; consideration, a result determined by chance rather than skill, and a reward. If the machine displays all three qualities, it will then be "so intrinsically connected with gambling" as to be a gambling device per se. *Id.,* 502 Pa. at 194, 465 A.2d at 977. The *Electrosport* Court noted that the video poker machine in question there was equipped with a "knock-down" button, a

meter to record the game credits that had been "knocked-off", the ability to hold-over previous play to the next game to increase the chance of a higher pay-off, a short playing time and a "dipswitch", which allows the owner to vary the number of game credits per coin. The Court noted that none of these features was necessary to the functioning of the device as a legitimate profit-making amusement game, and held the Commonwealth had sustained its burden of proof by showing by a preponderance of the evidence that the *Electrosport* machine manifested all three features necessary for it to be classified as a gambling device per se.

■ Appellants contend that since the presence of a meter device to record the erased credits on the machines is required for a dispositive finding that the video poker machines are gambling devices per se and the presence of meters was not determined herein until after the machines were seized, the "reward" element under *Electrosport* had not been established and probable cause was, therefore, lacking to consider the machines gambling devices "per se". This argument is misdirected. Appellants confuse the standards used in determining sufficient probable cause with the standards used in determining whether a device may be classified as a gambling device per se. A finding of the latter is not a prerequisite to the former.

Probable cause is to be determined using a flexible, common sense standard. As the Supreme Court stated in their plurality Opinion of *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

> It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, non-technical' probability that incriminating evidence is involved is all that is required.

*Id.* 103 S.Ct. at 1543; *Commonwealth v. Kendrick*, 340 Pa.Super. 563, 490 A.2d 923 (1985).

■ This Commonwealth has held a magistrates determination of probable cause should be given deference, *Commonwealth v. Ryan*, 300 Pa.Super. 156, 446 A.2d 277 (1982), and in reviewing such determination it should be remembered that while mere suspicion is inadequate, the affidavit need only set forth the probability, and inadequate, the affidavit need only set forth the probability, and not a prima facie case, of criminal activity. *Commonwealth v. Mazzochitti*, 299 Pa.Super. 477, 445 A.2d 1214 (1982).

Appellants in the alternative argue that former 47 P.S. § 4–476 (repealed by act 1 of 1985, P.L. 1 on February 28, 1985) [3] which permitted a liquor licensee to offer and award cash prizes for various games, including "card tournaments or contest" was in effect during the investigation period and, therefore, no probable cause existed to infer the machines were being used illegally. Appellants contend video poker machines should have fallen under the auspices of the act as the machines simulate the shuffling of a deck of cards and the dealing of one hand of five card draw poker. This argument has no merit. Video poker machines are not decks of cards and the act did not apply to them.

To summarize, we conclude that under the circumstances of this case, probable cause existed to associate the video poker machines with illegal gambling.

Having determined probable cause existed, we must now examine appellants' contention that that magistrates of the city of Pittsburgh lack jurisdiction to issue search warrants and, therefore, any evidence obtained pursuant to those warrants must be suppressed.

Specifically, appellants argue that since subsection (a)(1) of 42 Pa.C.S.A. § 1143 of the Judicial Code (Jurisdiction and Venue) makes no specific reference to the authority of Pittsburgh magistrates to issue search warrants, said magistrates, therefore, have no power to do so. That section of the statute provides:

3. Act 54 of 1984, 3 Pa.Leg.Serv. 100 (1984).

> [T]he Pittsburgh Magistrate Court shall have jurisdiction of all the following matters:
>
> (1) Criminal complaints accusing any person of the commission of any felony or misdemeanor, where such (offense) has been committed within the corporate limits of the city of Pittsburgh, *and to issue warrants for the arrest of such person so accused,* administer on this and hold preliminary hearings in all such cases, and commit to jail, or bind over for trial or discharge any such accused person, as the evidence produced at such hearing may warrant. The court shall have the power to admit to bail as prescribed by general rules (emphasis added).

An examination of the history of the Pittsburgh magistrates and the applicable law surrounding them is necessary prior to the resolution of this issue.

The police magistrates of the city of Pittsburgh date their existence to the General Assembly's passage of the acts of June 16, 1891, P.L. 303, sections 1–5, 53 P.S. § 22264, repealed and replaced by the Judicial Code, 42 Pa.C.S.A. § 1141 *et seq.* (1981). Section 1 of this act makes specific reference to the power of the magistrates "to issue warrants of arrest" but nowhere makes any reference to the power to issue search warrants.

The act of March 7, 1901, P.L. 20, art. 1, sec. 2, as amended 53 P.S. § 22182, states "[t]he mayor ... shall have all the powers and jurisdiction of justices of the peace under existing laws of this Commonwealth."

The Code then further states, at 53 P.S. § 22261, enacted March 7, 1901, as amended:

> The police power for taking information, making arrests, and preservation of the peace, shall hereafter vest in the mayor and not less than five nor more than eight police magistrates—approved by the mayor.

Again, there is no specific reference to the power of the magistrates to issue search warrants.

Subsequently, the Pittsburgh magistrates were made a part of the unified judicial system as a result of the consti-

tutional conventions of 1968. Specifically, article V, schedule 21, subtitled "City of Pittsburgh", states:

Upon the establishment of magisterial districts, pursuant to this article and schedule, and unless provided by law, the police magistrates—shall continue as present. Such magistrates shall be part of the unified judicial system, and shall be subject to the general supervisory and administrative authority of the Supreme Court.

Schedule 21 of article V was reenacted as part of the Judicial Code, 42 Pa.C.S.A. § 1141, *et seq.*, 1976, July 9, P.L. 586, No. 142, § 2 effective June 28, 1978, which states:

The Pittsburgh Magistrates Court ... shall be the Police Magistrates authorized to be continued in existence by § 21, Schedule to Article V of the Constitution of Pennsylvania adopted April 23, 1968.

The court below specifically found that to "continue as present" is to continue "with all powers and jurisdiction of justices of the peace under existing laws of this Commonwealth", as was granted to the mayor and appointed city magistrates under the second class city code.

The trial court also focused on the Pennsylvania Rules of Criminal Procedure in concluding the city magistrates have jurisdiction to issue search warrants. Rule 2001 of the Pennsylvania Rules of Criminal Procedure provides: "A search warrant may be issued by any issuing authority within the judicial district wherein is located either the person or place to be searched." An "issuing authority" is defined by Rule 3(k) (formerly 3(J)) as "any public officer having the power and authority of an alderman, justice of the peace, magistrate, or district justice". Furthermore, the comment to Rule 2001 states any "judicial officer" in [issuing a search warrant] would be considered an "issuing authority" for purposes of this rule.

■ We agree with the determination of the trial court that the city of Pittsburgh police magistrates have jurisdiction to issue search warrants as "judicial officers" of the unified judicial system subject to the general supervisory and administrative authority of the Supreme Court. Since

the statutory provision in question and the Rules of Criminal Procedure relate to the same subject matter (who may issue search warrants), we believe the various provisions must be read in pari materia so that effect can be given to both.

■ This Court also concludes the issuance of a search warrant involves a matter of procedure and is, therefore, subject to the rule making power of the Supreme Court, who may, in the exercise of that power, authorize the issuance of a search warrant where the statute in question has not by clear and express language done so.

Our categorization of the issuance of a search warrant as procedural flows from the definition of legal process:

> This term is sometimes used as equivalent to 'lawful process'. Thus it is said that legal process means process not merely fair on its face, but in fact valid. But properly it means a summons, writ, *warrant*, mandate or other process issuing from a court.

*Black's Law Dictionary* at p. 1085 (5th Ed.1979).

Having thus determined the issuance of a search warrant involves a matter of procedure, and does not constitute the institution of criminal proceedings per se under the Rules of Criminal Procedure,[4] it follows that the issuance of a search warrant is subject to the power of the Supreme Court to govern court procedures.

Pennsylvania constitutional article V, section 10(c) of the 1968 Constitution empowers the Supreme Court "to prescribe general rules governing practice, procedure, and the conduct of all courts ... if such rules are consistent with this constitution and neither abridge, enlarge, nor modify the substantive rights of the litigant."

The question thus becomes whether our interpretation of Rule 2001 is in contravention of the constitutional prohibition against "abridging, enlarging, or modifying substantive rights." It is true that the purpose and effect of Rule 2001 are procedural, yet its performance will touch upon the

4. Pa.R.Crim.P. 3(h), 3(n), 51, 101 and 2001.

substantive rights of defendants subject to its parameters. However, our Supreme Court has held:

[T]he fact that a rule does involve the substantive rights of litigants should not mean that the rule is an inappropriate topic for Supreme Court rule making. Most rules of procedure will eventually reverberate to the substantive rights and duties of those involved.... This Court should not be prevented from exercising its duty to resolve procedural questions merely because of a collateral effect on a substantive right.

*Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 66, 436 A.2d 147, 155 (1981).

Defendants subject to such warrants are still entitled to the "performance of detached judicial functions required with respect to issuance of search warrants", *Commonwealth v. Davis,* 225 Pa.Super. 242, 310 A.2d 334 (1973), and the issuing authority is subject to the constitutional prohibition against unreasonable searches and seizures as set forth in the fourth and fourteenth amendments to the Constitution of the United States.

The city of Pittsburgh should be free to develop its own procedure for the issuance of search warrants to meet the practical needs of local law enforcement, as long as that enforcement does not diminish any substantive constitutional right of its citizens.

We now turn to those other issues raised by appellants and address them seriatim.

Appellant Dumont argues that the police inspection of business license applications on file in the Department of Finance in the city of Pittsburgh without a warrant constituted an illegal search and seizure.

Section 701.03(b) of the City Code states:

The license officer [superintendent of the Bureau of Building Inspection] shall keep all information furnished or obtained under the authority of this Title *in strict confidence.* Such information shall not be subject to public inspection and shall be kept so the contents thereof

shall not become known except to persons charged with administration of this Title.

■ Appellant argues that "persons charged with administration" of the Title are the licensing officer and, pursuant to section 101.04(a)(4) of the code, those of his employees to whom he delegates administrative authority and that the code does not give police officers such administrative authority. The trial court found this allegation to be without merit and we concur in their conclusion.

Every licensee who meets the standards for issuance of a license under section 701.06[5] of the code is subject to certain continuing standards pursuant to section 701.09, Duties of licensee. Subsection (a)(1) of that section reads as follows:

> (1) Permit Inspection. Permit all reasonable inspections of his business and examinations of his books by public authorities authorized by law.

Subsection (b)(4) of that section mandates that the licensee properly display required insignias on machines subject to the code.

> Machines: Affix any insignia delivered for use in connection therewith upon the outside of any coin, vending or other business machine or device, so that it may be easily seen at all times by interested parties.

Furthermore, section 701.12, Enforcement and Inspections, mandates that police officers enforce compliance with the ordinance.

> (a) Inspections. The following persons hereunder called 'inspectors' are authorized to conduct inspections in the manner prescribed herein:
>
> * * * * * *
>
> (3) Police Officers. All police officers shall inspect and examine businesses located within their respective jurisdictions to enforce compliance with this Title.

---

5. This section prohibits the license officer from issuing a license which "will be detrimental to or endanger the public welfare."

The trial court concluded, "it would obviously be ridiculous for inspectors (police officers) to conduct inspections without being able to file complaints against violators and this would be impossible without being able to ascertain their identity. Enforcement requires that inspectors, including police officers, have access to license applications." (Slip Op., Dauer, J., 8/26/86, p. 6.)

We find this to be the only reasonable interpretation of these sections and affirm the judgment of the trial court as to this issue.

Appellants also raise various evidentiary issues concerning sufficiency of evidence to support convictions for intentionally maintaining gambling devices. Specifically, appellants argue that no evidence was presented at trial which proved the video poker machines seized by the Pittsburgh Police had been intentionally maintained for gambling purposes.

Section 5513 of the Crimes Code provides in pertinent part:

(a) Offense defined.—

A person is guilty of a misdemeanor of the first degree if he:

(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes ...

(18 Pa.C.S.A § 5513 (a)(1).)

■ To prove a criminal violation of this section of the crimes code, the Commonwealth must prove beyond a reasonable doubt the accused specifically intended to use the device for gambling purposes or it actually was so used *Commonwealth v. Forry,* 201 Pa.Super. 431, 193 A.2d 761 (1963). It is not sufficient to sustain a criminal conviction to show the defendant possessed a gambling device per se absent proof of specific intent to use it for gambling purposes. *Commonwealth v. Bretz,* 289 Pa.Super. 259, 433

A.2d 55 (1981); *Commonwealth v. Rose,* 257 Pa.Super. 514, 390 A.2d 1356 (1978).

■ We believe the Commonwealth proved beyond a reasonable doubt that appellants set up or maintained a device to be used for gambling purposes.

Our scope of review for evaluating claims based on the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Harper,* 485 Pa. 572, 403 A.2d 536 (1979); *Commonwealth v. Griscavage,* 336 Pa.Super. 141, 485 A.2d 470 (1984).

In the instant case, the trial judge noted the Commonwealth had proved possession of video poker machines seized as gambling devices per se under the standards set forth in *Electrosport, supra.* Further, the judge specifically noted that he based his conclusion that appellants possessed the requisite intent to maintain gambling devices on the fact the machines bookkeeping capability had actually been utilized in terms of keeping track of the net value the machines were producing relative to the games knocked off and that this utilization was contrary to appellants' explanation of the presence of the "knock off" switch. The court found such a bookkeeping capability would not have been utilized in the absence of usage of the machines as gambling devices. It is true, as appellants contend, that no payoffs had ever been received or observed at either the Arsenal Bar or Dott's Bar. However, under the circumstances of this case, we do not believe the observation or receipt of payoffs to be a prerequisite to a finding of guilty, where appellants totally failed to rebut the Commonwealth's evidence.

■ Lastly, both appellants allege the Commonwealth's evidence of their personal responsibility for conspiring to maintain and actually maintaining poker machines as gambling devices did not approximate proof beyond a reason-

able doubt. Appellant Dumont avers his criminal culpability in this case was imputed to him solely by dint of his being president of Williams Vending Company, Inc., the licensed owner of the poker machines and that he may not be convicted of a criminal offense simply because he is an officer of the corporation which perpetrated the act. This contention has no merit. Williams Vending Company, Inc. had registered the machines through appellant's wife's name, Pamela Dumont, in her capacity as secretary of the corporation. After a warrant was issued for Pamela Dumont's arrest, appellant signed a written statement on the advice of counsel that Williams Vending Company owned the machines and subsequently made oral statements to the police that he was the owner of the machines. Therefore, we find the Commonwealth proved beyond a reasonable doubt that Dumont was the owner of the machines in question and maintained them for gambling purposes.

■ With regard to appellant Dott's contention that the Commonwealth failed to prove beyond a reasonable doubt, he maintained the poker machines in Dott's bar as gambling devices, the trial judge chose not to believe his statement that he had sold his interest in the bar to his aunt some eight years previously and had merely forgotten to take his name off the liquor license. An examination of the record reveals appellant produced no cancelled check or receipt from sale of his interest in the bar, he could not remember the attorney's name involved in the transaction, did not call his aunt to testify on his behalf, and in short, produced no evidence to back up his statement. The credibility of the witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact. *Commonwealth v. Smith*, 502 Pa. 600, 467 A.2d 1120 (1983); *Commonwealth v. Ferguson*, 358 Pa.Super. 98, 516 A.2d 1200 (1986).

■ In addition to the argument pertaining to the city magistrate's authority to issue search warrants disposed of previously, appellant Kanarek first argues the evidence was insufficient to warrant his conviction for maintaining gam-

bling devices. Appellant contends the Commonwealth only established that he was the chief executive of United Vending, Inc., and failed to show he exercised dominion and control over the acts constituting the criminal offense. This argument has no merit. The Commonwealth proved that appellant signed the 1985 city of Pittsburgh license stamps for the video poker machines in the Delux Arcade and executed an agreement between Delux Arcade and United Vending, Inc., over the designation "owner, partner, officer". In addition, the Commonwealth noted the articles of incorporation showed that appellant Kanarek owned all but two of the 1,000 shares of stock of United Vending, Inc. The combination of virtual total ownership and executive officer status, together with the fact of his signature on the license tax stamps affixed to the machines at the time of the offense, yield the inescapable conclusion that appellant Kanarek personally dominated and controlled the affairs of United Vending, Inc., and the video poker machines owned by the company for his own financial benefit.

■ Appellant next contends the trial court erred in trying appellant on July 16, 1986 after the Commonwealth had been granted a postponement at trial on June 27, 1987. Appellant alleges the continuance granted on June 27th was in effect a mistrial and would subject him to the safeguards of double jeopardy. This contention also has no merit. The Commonwealth's failure to produce all witnesses necessary for trial was prompted in part by defense counsel's phone call the night before trial stating that the matter might be postponed. In addition, the characterization of this ruling as a mistrial is erroneous as it was clearly a continuance, and as such, within the discretion of the lower court to grant (see *Commonwealth v. Smith,* 442 Pa. 265, 275 A.2d 98 (1971)).

■ Appellant finally argues he is entitled to a new trial because the Commonwealth failed to disclose certain exculpatory evidence pursuant to his discovery requests. Appellant claims the Commonwealth intentionally failed to disclose the 1986 city of Pittsburgh license tax applications

which bore the signature of one Edward Weiss [6] and that such evidence is exculpatory because the gambling offenses occurred during 1986. This claim must be dismissed. The only city licenses relevant to appellant's conviction were the ones affixed to the machines in the early days of 1986, which were the 1985 licenses applied for by appellant. Further, the trial court specifically found that even if the fact that the 1986 licenses were signed by another individual, such an act required the delegation of authority from appellant in his capacity as the corporation's president and said delegation implies knowledge on his part of the maintenance of the machines as gambling devices.

Therefore, based on the foregoing analysis, we affirm the judgments of sentence as to appellants Dott and Dumont at Nos. 1091 and 1113 Pittsburgh, 1986 respectively, and affirm judgment of sentence as to appellant Kanarek at No. 1368 Pittsburgh, 1986.

6. A co-defendant down below.