558 A.2d 542

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Gary Thomas ALEWINE.**

Superior Court of Pennsylvania.

Argued Dec. 15, 1988.

Filed March 27, 1989.

Reargument Denied May 31, 1989.

284

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for Com., appellant.

Wayne V. DeLuca, Pittsburgh, for appellee.

Before BROSKY, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

The Commonwealth of Pennsylvania appeals from an order granting Gary Thomas Alewine's motion to suppress the introduction of various gambling devices and paraphernalia into evidence at his trial on three counts of violating 18 Pa.C.S.A. § 5513(a) dealing with gambling devices and gambling. We reverse and remand.

On September 3, 1987 Trooper Andre Stevens entered the Office Lounge, a restaurant and bar owned by Alewine, and played two different poker machines. On both machines the officer achieved a score of forty free games. The barmaid rewarded Stevens for each win by giving him ten dollars. Stevens then observed the barmaid cancel the amount of free games indicated on the machines by use of two different types of "knock off" mechanisms. Stevens then placed a sticker onto the machines to identify these particular poker machines as the machines which he played. On the basis of this information, a search warrant was obtained on September 24, 1987 authorizing the search and

seizure of gambling devices and gambling paraphernalia at the Lounge. On the same day a search of the Office Lounge was executed and authorities confiscated two poker machines carrying Stevens' mark, two unmarked video poker machines, three remote control switches and a cigar box containing money.

Alewine filed an Omnibus Pre–Trial Motion to suppress evidence confiscated at the lounge. On March 25, 1988 the trial court ordered that all evidence seized under the warrant be suppressed because the information upon which the search warrant was granted was stale. This appeal follows.

The Commonwealth raises the following arguments on appeal:

I. WHETHER THE COURT ERRED IN SUPPRESSING THE EVIDENCE ON THE GROUNDS THAT THE INFORMATION SET FORTH IN THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT WAS TOO STALE TO PROVIDE PROBABLE CAUSE?

II. WHETHER THE EXCLUSIONARY RULE SHOULD NOT APPLY BECAUSE THE POLICE IN EXECUTING THE SEARCH WARRANT WERE ACTING IN GOOD FAITH RELIANCE UPON AN ASSESSMENT OF PROBABLE CAUSE BY A NEUTRAL MAGISTRATE?

Review of a suppression order is limited to pure questions of law. *Commonwealth v. Hamlin,* 503 Pa. 210, 214, 469 A.2d 137, 139 (1983). When determining whether the trial court has misapplied the law, we must accept as true the findings of the trial court reasonably supported by the record, considering only that evidence presented by the defendant's witnesses and so much of the evidence of the prosecution that is fairly read into the context of the case as a whole and is uncontradicted. *Id.*

The existence of probable cause is determined by a consideration of all circumstances including the reliability of the proffered information, and the probability that the

evidence sought will be found in the place to be searched. *Commonwealth v. Weidenmoyer,* 518 Pa.Super. 2, 7–9, 539 A.2d 1291, 1294 (1988). In particular, the chief factors to consider when determining whether the information supporting the issuance of a warrant has grown stale are the quality and nature of the seized evidence, the ease with which the evidence may be disposed of, and the lapse of time between the information and the warrant. *Commonwealth v. Klimkowicz,* 331 Pa.Super. 75, 81, 479 A.2d 1086, 1089 (1984). Other considerations may be:

> the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

W. LaFave, "Search and Seizure" § 3.7(a) p. 77 (2d ed. 1987) *quoting Andresen v. State,* 24 Md.App. 128, 331 A.2d. 78 (1975), aff'd sub nom. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627. The continuity of the illegal scheme may be established by the inherent nature of the criminal activity itself or evidence that the activity has extended over a period of time. LaFave, *supra* at § 3.7(a) p. 81.

In the case before us, the trial court granted Alewine's motion to suppress evidence confiscated at his establishment on the basis that there was no reason to believe that the gambling observed by Stevens was an on going activity. Moreover, the court concluded that "[t]here is nothing inherently illegal about playing video machines. Rather, it is receiving payment for play that converts otherwise harmless conduct into criminal activity." Opinion, August 9, 1988 at 4. We find that the trial court has failed to perceive the importance of the fact that there was reason to believe that Alewine was in possession of a *per se* gambling device and not just that he was suspected of permitting gambling activity on the premises.

■ 18 Pa.C.S.A. § 5513(a)(1) which makes the knowing possession of a gambling device illegal, provides:

(a) Offense defined. A person is guilty of a misdemeanor of the first degree if he:

(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;

Further, our supreme court has determined that machines possessing the qualities of "consideration", "chance", and "reward" are so intrinsically connected to gambling as to be gambling devices *per se*. *Commonwealth v. Two Electronic Poker Game Machines*, 502 Pa. 186, 194, 465 A.2d 973, 977 (1983). Therefore, in order to establish probable cause for a warrant on September 24, 1988, it was unnecessary for the Commonwealth to show that there was reason to believe that the poker machines were continuously used for gambling, but rather, the Commonwealth only needed to show that there was reason to believe that Alewine continued to be in possession of a *per se* gambling device, as this, in and of itself, was illegal.

■ The knock off device found on two of the gambling machines in question provided sufficient information for a reasonable person to believe that the machines which Stevens played were *per se* gambling devices, and therefore subject to confiscation pursuant to 18 Pa.S.C.A. § 5513. *Commonwealth v. Dumont*, 370 Pa.Super. 155, 536 A.2d 342 (1987). Accordingly, all that was left to be shown by the Commonwealth upon request for the warrant was a reasonable belief that Alewine was still in possession of the video poker machines on September 24, 1987, some twenty-one days later. We find that sufficient information was provided to lead one to believe that the machines would be present in the Office Lounge three weeks after they were observed.

The information proffered to support probable cause must be considered using a "commonsense, nontechnical,

ungrudging and positive" approach. *Commonwealth v. Jones,* 506 Pa. 262, 269, 484 A.2d 1383, 1387 (1984). First, we point out that although Stevens tested only two machines, he observed four floor model poker machines present in the establishment, presumably of substantial size and not easily moved. Second, Stevens' affidavit suggested that the machines in question were in open view and easily accessible to patrons of the Office Lounge. Third, the barmaid appeared to routinely make "payoffs". When officer Stevens won the video game, the barmaid wrote his name on a cash register receipt and placed it under the register. She then pushed a button on the register, causing the register display to read "poker pay-off" and causing to be released a drawer from which she drew a transmitter. The barmaid then used the transmitter to cancel the free games Stevens had accumulated on the poker machine. All of these facts suggest that the video poker machines were a fixture of the establishment, used by the owner to attract customers and entertain them while they patronized the lounge.

Given the apparent size of the poker machines at issue, and that the poker machines were an attraction of the Office Lounge itself, we find that it was reasonable to believe that the machines would continue to be present at the establishment three weeks after they were observed. As a result of our determination, we do not reach the Commonwealth's issue II, relating to the good faith exception to the exclusionary rule. Accordingly, we reverse the order of the trial court and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge dissenting:

I respectfully dissent. The overriding and governing standard for searches and seizures under the Fourth Amendment is reasonableness. A whole body of case law on every level and in every forum has been devoted to

establishing what constitutes a reasonable search and seizure.. One premise which has evolved mandates that warrants not issue on stale information. In the present case I don't believe anyone would question that the information in the affidavit of probable cause was sufficient to allow the issuance of a warrant on September 3, 1987. However, I have substantial doubt that the information was sufficient on September 24, 1987.

The magistrate is empowered to issue a search warrant only where the information contained in the affidavit establishes a probable cause to believe that evidence of illegal activity, or perhaps contraband, will be found in the area to be searched. Our cases have consistently insisted that the facts establishing probable cause be closely related in time to the issuance of a warrant. *Commonwealth v. Eazer*, 455 Pa. 320, 312 A.2d 398 (1973). The reason for insistence on such a position is that, the closer the proximity in time, the more probable the cause to believe the evidence sought will be found, and, thus, the more reasonable the search-intrusion is. Our cases have also reflected a position that probable cause will be lacking if the information is not too proximate to the date of application or if it is otherwise stale. *Id.*

One accepted route to prevent the information in the affidavit from becoming stale is to establish an ongoing illegal activity. If such is shown the mere fact that key information in the affidavit refers to events occurring several weeks before will not obviate a finding of probable cause. *Commonwealth v. Shaw*, 444 Pa. 110, 281 A.2d 897 (1971). Such a course could have been taken here with little difficulty. However, it was not, and the suppression court, relying primarily on this absence, found probable cause lacking. The Commonwealth does not contest the suppression court's finding in this regard, but argues that, because there was reason to believe that appellant was in possession of an illegal gambling device, one that was per se illegal to possess, it was not necessary to establish continuing illegal activity. However, I am unconvinced that the search and

seizure was based upon a proper showing of probable cause.

Due to the staleness of the information and a lack of evidence supporting an ongoing operation or activity, the probable cause is suspect in this regard. As such, the Commonwealth cannot rely upon such an assertion or inference of gambling activity to support probable cause. Instead, they argue, they had probable cause to believe that the two machines the officer played were per se gambling devices which, without more, were subject to seizure. Note that the officer was unable to confirm with certainty that the machines possessed all the necessary qualities to be classified as per se gambling devices. However, they assert, there was *probable cause to believe* the machines possessed all the necessary qualities. Furthermore, and very important to their argument, they assert this type of probable cause can never be stale because if the machines are illegal machines they cannot regain legality.

Assuming appellant's position is well founded, one must question the proper scope of the warrant and thus the search and seizure. Does the fact that there is probable cause to believe two video poker machines are per se illegal create probable cause or justification to seize all other so called gambling paraphernalia, or must the scope of the search and seizure be limited to the two machines in question?

Alternatively, if there is a lack of probable cause to believe there is an ongoing gambling business involved and if there is no information regarding the other machines, do they somehow become subject to seizure? Are they guilty by association? Perhaps more importantly, and this may be the real issue here, can the Commonwealth "bootstrap" their way around a failure to establish a continuing or ongoing gambling operation by asserting that machines are per se illegal, thus allowing them to gain entrance and authority to seize not only the two machines, but also any evidence of an ongoing gambling business? To the extent probable cause is lacking as to an ongoing gambling busi-

ness, and existed only as to the two machines, the Commonwealth cannot assert that their intent was only to seize the two machines, for examination of the affidavit belies an assertion that the purpose of the search was limited to seizing the two per se illegal gambling devices.

In fact, the Commonwealth appears to acknowledge the rather tenuous nature of arguing that probable cause existed as to all the machines. They state in their brief:

> The affidavit for the search warrant refers to all four video poker machines on the premises of the Office Lounge. The Commonwealth recognizes that it stretches the concept of probable cause to the verge of "guilt by association" to argue that probable cause to search for and to seize the other two machines as gambling devices *per se* was established merely by their proximity to the one known to be gambling devices.

(N. 2, appellant's brief, p. 10). Rather, the affidavit was drafted so as to allege a gambling operation, and sought seizure of essentially all evidence of such gambling operation and gambling paraphernalia and devices. The Commonwealth failed to apply for the warrant in timely fashion and also failed to cure this defect by gaining additional information showing that the gambling activity was continuing. As such, it is questionable that probable cause existed at the time of issuance. And, of course, it goes without citation that probable cause must be judged based upon the facts contained in the affidavit, and cannot be provided by consideration of the evidence ultimately seized. The Commonwealth's argument regarding per se illegal gambling devices appears, to me anyways, to have been fashioned only in retrospect after a problem with staleness and probable cause was perceived. I don't believe this position taken after the fact can cure the lack of probable cause that existed at the time of issuance.

Assuming further that there existed probable cause to believe the machines were illegal gambling devices and subject to seizure, this does not automatically provide probable cause to believe these two machines would be found in

the search. I believe the Commonwealth's and majority position that there was probable cause to believe the machines were per se illegal can refer only to the particular two machines played by the officer. The Commonwealth apparently would not contend that probable cause extended beyond the two machines actually played by the officer as evidenced in their commentary about "guilt by association". To the extent it is stretching the concept of probable cause to assert that cause existed to seize the other two machines seen at the Office Lounge, it would seem likewise stretching that concept to assert that cause existed to search and seize any machines acquired between the time of surveillance and execution of the warrant. The question then becomes, and it relates to the safeguards of the time proximity requirement, was there was probable cause to believe the same two identified machines would be on the premises three weeks after their identification?

The majority argues that it was reasonable to conclude from the circumstances and trappings of the Office Lounge that video poker machines were a regular fixture or part of the decor there. From this fact, and the fact that the machines are relatively large, they assert, it could be reasonably presumed the machines would still be there upon execution of the warrant. I am unconvinced that this is the case. Even assuming that video poker machines were a regular fixture of the Office Lounge there was no guarantee that the two identified machines would still be there. Such video games, despite their size, I believe, are often rotated from location to location if for no other reason than to provide some variety to patrons. There is no indication in the affidavit as to whether the machines were owned by the Office Lounge or owned by someone else and leased to the lounge. Further, there is no indication as to how long these two particular machines had been at the Office Lounge. These are factors which could have a substantial bearing on the likelihood that the same two machines would be present upon execution of the warrant.

Further, to the extent we can assume the machines were there to provide revenue to the owner of the business, it is possible the machines would be replaced by others proven to bring in greater revenue, or replaced with perfectly legitimate coin operated machines which also happen to be pulling in a lot of money. Three weeks is a sufficient amount of time for the machines to be removed from the premises in the ordinary course of business. As stated by our Supreme Court in *Commonwealth v. McCants,* 450 Pa. 245, 299 A.2d 283, 286 (1973):

> In *Shaw* this court recognized that the facts and circumstances justifying a determination that probable cause exists may quickly change. This is not to say that the facts and circumstances are so fleeting that they always change. There are times when the facts and circumstance presented to the magistrate remain unchanged long after the warrant is issued. However, once it is recognized that it is *possible* for the facts and circumstances to change with the passing of time, a redetermination of probable cause is constitutionally required.

(Emphasis in original). I believe there was a definite possibility that the machines in question would be moved in the intervening three weeks, and, thus, I feel the staleness issue has not been sufficiently steered around by the arguments of the Commonwealth or the majority.

Finally, as indicated earlier, the overriding principle of search and seizure relates to reasonableness. Thus, I believe some inquiry of the reasonableness of the need to rely upon stale information is also required. What strikes me as peculiar regarding the reliance upon stale information in this case is the fact that the staleness could have been remedied with relative ease. There was apparently no particular legitimate reason that the presence of the machines in question at the Office Lounge could not have been confirmed by a quick stop there at a time considerably more proximate to the application for a search warrant. As the suppression court noted, the Office Lounge is relatively close in distance to the issuing magistrate's office.

Consequently, the presence of the illegal machines could have been confirmed with relative ease. Furthermore, assuming the Commonwealth's position is meritorious, the investigating officer would have needed to do no more than confirm that the previously identified machines were still present. It would have been unnecessary to again play them and receive payment. As such, I believe under the totality of the circumstances the search was unreasonable, and I would affirm the order of the suppression court.