## Commonwealth v. Rodia

74

C.P. of Delaware County, nos. 348-94 and 350-94.

*John F.X. Reilly, assistant district attorney,* for Commonwealth.
*Eugene A. Bonner,* for defendant.

KEELER, *J.,* July 26, 1995—The defendant, Christopher Rodia, was tried at a two day non-jury trial which began on December 13, 1994, with respect to the above-captioned cases. He was found guilty of statutory rape and corrupting the morals of children in the case docketed at no. 348-94. In addition, the court found

him guilty of statutory rape, solicitation to commit involuntary deviate sexual intercourse, aggravated indecent assault, and corrupting the morals of children with respect to the charges leveled in docket no. 350-94.

## FACTUAL BACKGROUND

Over a two year period beginning in 1989, the defendant consumed beer and viewed pornographic videos with two 12 year old females and induced the victims to engage in sexual activities, culminating in vaginal intercourse. The victims, who are cousins, would visit a relative on the weekends. The victims' relative lived next door to the defendant. Both of the victims knew the defendant for several years prior to the defendant's initiation of the sexual activities. The victims were introduced to the defendant by their uncle, who was 14 at the time the defendant began making sexual advances toward the victims.

The victims would regularly visit with the defendant while staying at their relative's house. The children would engage in sporting activities with the defendant. They would also go into the defendant's house to watch television and play computer games. In 1989, when the victims were both 12 years old, the defendant began making comments of a sexual nature to the girls. About this time, the defendant started giving the girls beer and showing them a pornographic video entitled "Blue Jeans." This video was distinctive due to the fact that the defendant and other individuals had dubbed their voices over the audio portion of the tape. When the defendant viewed the video with just one of the victims present, he would ask the victims to mimic that which was taking place on the video. The defendant then began having sexual contact with each of the victims. This contact began with the defendant fondling the victims and eventually progressed to the defendant having vaginal intercourse with each of the two victims. The de-

fendant's sexual relations with the victims continued through 1991.

Neither of the victims disclosed their sexual relations with the defendant until 1992. One of the victims, J.C., first related her physical contacts with the defendant to a psychiatrist while she was staying at the Fairmount Charter House, a psychiatric hospital in Philadelphia. Thereafter, J.C. informed the police of the defendant's conduct in October of 1993. The other victim came forward, after J.C. had gone to the police, when J.C.'s mother notified her mother of the defendant's conduct.

## PROCEDURAL BACKGROUND

Defendant's pretrial omnibus hearing was held on October 20, 1994. The relief requested by defendant at his pretrial hearing included: the suppression of evidence seized at the defendant's residence pursuant to a search warrant; the suppression of statements made by defendant prior to the execution of the search warrant; and the discovery of all psychiatric records of the victims. All three of these motions were denied by the court. The defendant then filed a motion with the court to conduct an in camera review of J.C.'s psychiatric records from her stay at the Fairmount Charter House. These records were in possession of the Commonwealth. The defendant sought court examination of these documents to determine, "if there is any evidence which tends to establish that her testimony [was] the product of fantasy and/or confabulation and/or hypnotic refreshment and/or distortion of her memory . . . ." The court conducted the requested examination and found no such evidence in the psychiatric records.

Subsequent to trial timely post-trial motions were filed. The sole issue raised in defendant's post-trial motion for a new trial is that the court erred in not permitting the defendant free access to J.C.'s psychiatric records. In deference to completeness, the court will address

the suppression issues as well as the issues related to J.C.'s psychiatric records.

## DISCUSSION

### I. *Suppression of Tangible Evidence*

The defendant sought to suppress evidence seized pursuant to a search warrant executed at defendant's residence, contending that the information contained in the affidavit of probable cause was stale. The defendant argues that since the criminal acts alleged in the affidavit occurred approximately two years prior to the warrant's issuance, the information was temporally remote and therefore stale. The time lapse between the criminal activity and the issuance of the warrant, the defendant asserts, renders the warrant invalid as it was issued without a proper showing of probable cause.

Defendant's argument possesses facial appeal. Establishment of a time frame in which articles sought were present at a given location is critical in securing a search warrant "as a warrant can only issue upon probable cause that exists at the time of issuance." *Commonwealth v. Haggerty,* 388 Pa. Super. 67, 72, 564 A.2d 1269, 1272 (1989), citing *Commonwealth v. Stamps,* 493 Pa. 530, 427 A.2d 141 (1981). "The existence of probable cause is determined by a consideration of all circumstances including the reliability of the proffered information, and the probability that the evidence sought will be found in the place to be searched." *Commonwealth v. Alewine,* 384 Pa. Super. 283, 286-87, 558 A.2d 542, 543 (1989). The main factors for consideration in determining if the information supporting the issuance of a warrant has grown stale are, "the quality and nature of the seized evidence, the ease with which the evidence may be disposed of, and the lapse of time between the information and the warrant."

*Alewine, supra* at 287, 558 A.2d at 543. Other factors for consideration include: "the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc." *Id.*

The information proffered in support of the issuance of a search warrant must be considered using a "commonsense, nontechnical, ungrudging, and positive approach." *Alewine, supra* at 288-89, 558 A.2d at 544, quoting *Commonwealth v. Jones,* 506 Pa. 262, 269, 484 A.2d 1383, 1387 (1984).

In the present case, even though approximately two years had passed since the cessation of the criminal activity, the type of criminal activity alleged and the nature of the information supplied by the affiant outweigh application of a strict time limitation in assessing probable cause for the issuance of the warrant. The items sought in the application included the videotape "Blue Jeans" and any other evidence of child molestation, including journals or diaries. Detective Jack Kelly, of the Delaware County CID, stated in the affidavit that he has completed seminars concerning the investigation of the sexual abuse of children. Further, his affidavit observed that it is common for individuals who commit these types of crimes to keep diaries or preserve items associated with the sexual assaults as a way to relive their encounters when no victims are available. Detective Kelly believed that the defendant still maintained the video "Blue Jeans" in his possession. Despite the passage of time, defendant continued to reside at the same address. Given the factual information provided, the district justice could reasonably conclude that evidence of the sexual assaults upon the two victims remained at the defendant's residence. The affidavit

in support of the warrant established sufficient probable cause to be valid and therefore the evidence was not subject to suppression.

## II. *Suppression of Defendant's Statements*

The defendant also requested exclusion of statements made by him prior to the execution of the search warrant. Police detectives arrived at the defendant's residence and asked the defendant if he would answer some questions. The defendant admitted the detectives into his house. The questioning took place with the defendant's father present. The defendant never asked the detectives to leave and never objected to or refused to respond to any questions posed by the detectives. After the detectives finished their questioning of the defendant, they returned to their car, retrieved the search warrant, and, after serving the warrant, searched the defendant's house.

The triggering condition which necessitates advising an individual of his constitutional rights in relation to a possible criminal prosecution is custodial interrogation. Whether an encounter with government agents is custodial in nature, "must be determined with reference to the totality of the circumstances." *Commonwealth v. Edmiston,* 535 Pa. 210, 225, 634 A.2d 1078, 1086 (1993). The standard for determining whether the police have initiated a custodial interrogation, "is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the [police] or the person being seized." *Id.*

Application of an objective standard makes it clear the questioning of the defendant was not custodial in nature. He voluntarily allowed the detectives into his home and answered their questions without objection. The defendant never asked the police to terminate the

questioning or to leave. Objectively, the defendant could have terminated the questioning at any time or could have asked the detectives to leave his premises. The defendant's encounter with the detectives manifests itself as mere informal questioning. It was not a situation reeking with the scent of official oppression and coercion which was the mischief addressed in much of the constitutional case law. *Orozco v. Texas,* 392 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). As such, the detectives were not obliged to provide the defendant with *Miranda* warnings.

### III. *Production/Access to the Victim's Psychiatric Records*

The defendant, in his post-trial motion, contends that the court erred by not providing the defense with free access to the psychological records as initially requested by the defendant in his omnibus motion. After denying defendant's request for this information in the omnibus, the trial court, at defendant's specific request, conducted an in camera review of J.C.'s psychological records; records which were in possession of the prosecution prior to trial. The court's examination failed to reveal statements or notations which would suggest that the charges were imagined, fabricated or otherwise suspect.

The defendant contends that any privilege of confidentiality that existed between J.C. and her psychiatrist was breached when these records were provided to the Commonwealth. Consequently, the defendant asserts that the court, by not allowing the defense free access to these records, violated the defendant's right to confrontation and cross-examination of witnesses under the United States and Pennsylvania Constitutions. U.S. Constitutional Amendment 6; Pa. Constitution Article 1, Section 9.

Recent judicial pronouncements and legislative changes make this a particularly vexing area of the law. In Pennsylvania there exists an absolute statutory privilege between psychiatrist and patient. The statute mandating for the absolute privilege provides:

"No psychiatrist or person who has been licensed . . . to practice psychology shall be, without written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client." 42 Pa.C.S. §5944 (Cum. Supp. 1995).

Thus, more recent judicial decisions have concluded that the denial of access to psychiatric records, subject to an absolute statutory privilege, does not violate a criminal defendant's right to confrontation and compulsory process under the Pennsylvania Constitution. See *Commonwealth v. Patosky,* 440 Pa. Super. 535, 541, 656 A.2d 499, 502 (1995); *Commonwealth v. Wilson/Aultman,* 529 Pa. 268, 278, 602 A.2d 1290, 1296 (1992); *Commonwealth v. Kyle,* 367 Pa. Super. 484, 505, 533 A.2d 120, 131 (1987), *appeal denied,* 518 Pa. 617, 541 A.2d 744 (1988).

Yet, the question of privilege or nondisclosure has given way to informational access in certain circumstances. *Commonwealth v. Lloyd,* 523 Pa. 427, 432, 567 A.2d 1357, 1359 (1989) (defense counsel's access to victim's psychotherapeutic records required in order to comply with state constitution's right to confrontation and compulsory process provisions); *In Matter of Pittsburgh Action Against Rape "PAAR",* 494 Pa. 15, 19, 428 A.2d 126, 127-28 (1981) (after in camera review, defendant's counsel entitled to access to information regarding communications between victim and sexual

abuse counseling center—common law may not be expanded to contemplate such a privilege);[1] *In re "B"*, 482 Pa. 471, 484, 394 A.2d 419, 425 (1978) (statutory privilege held not a bar to juvenile court's access to information—however "deeper roots" of individual's privacy interests preclude compelled disclosure).

The issue of whether a defendant's right to confrontation and compulsory process entitled him to obtain privileged psychological records prior to trial was first considered in *Kyle* about seven years ago. *Kyle, supra* at 490, 533 A.2d at 123. The court in *Kyle* considered a situation where, "the interests of the accused in learning of favorable witnesses as well as obtaining arguably useful information directly conflicts with society's interest in maintaining confidentiality between a psychologist and a client." *Kyle, supra* at 494, 533 A.2d at 125. After a lengthy discussion regarding the societal interest in maintaining open communications between psychologists and clients, the court determined that society's interests in maintaining the confidentiality of these communications outweighed the interests of an accused in reviewing arguably useful information protected by the privilege. *Kyle, supra* at 503, 533 A.2d at 129-30. In making this determination the court also

---

1. From an historical and legal perspective, it is interesting to note that the Supreme Court's decision in *PAAR* engendered a legislative response. In 1981, the Pennsylvania Legislature passed a statute prohibiting the release of confidential oral or written communications between a sexual assault counselor and a victim for use in a criminal proceeding without prior consent of the victim. 42 Pa.C.S. §5945.1(b)(1) (Cum. Supp. 1995). This enactment of an absolute privilege has been interpreted by later Pennsylvania courts as effectively reversing the Supreme Court's decision in *PAAR*. *Wilson/Aultman, supra* at 275-76, 602 A.2d at 1294-95; *Commonwealth v. Kennedy*, 413 Pa. Super. 95, 112, 604 A.2d 1036, 1045 (1992) (en banc). Therefore, any precedential value the *PAAR* decision once had has since evaporated.

examined the absolute language of the statutory privilege. The court concluded that the legislature in comparing the privilege to the one that exists between attorney and client, which has withstood constitutional challenge, supported nondisclosure. *Kyle, supra* at 494-95, 533 A.2d at 125-26.

The Superior Court in recent years has on a number of occasions revisited the issue of the constitutionality of the privileged communication statutes beginning in 1992 with *Commonwealth v. Kennedy,* 413 Pa. Super. 95, 115-16, 604 A.2d 1036, 1047 (1992). The analytical foundation of this decision relies upon the logic developed in *Kyle. Id.* In turn, *Kennedy* has been cited in a long, uninterrupted line of Superior Court cases which have upheld the constitutionality of the privileged communication statutes and have denied a defendant access to a victim's therapeutic records. See *e.g., Commonwealth v. Eck,* 413 Pa. Super. 538, 544, 605 A.2d 1248, 1252 (1992) ("Information which is protected by an absolute statutory privilege is not subject to disclosure and denial of access . . . is required."); *Commonwealth v. Smith,* 414 Pa. Super. 208, 213, 606 A.2d 939, 941-42 (1992) (defendant's constitutional rights to confrontation and compulsory process were not violated by the court's denial of access to witness' psychiatric records subject to absolute privilege under statute). The fact that the *Kennedy* analysis was reaffirmed as recently as four months ago is further evidence of its continuing vitality. *Patosky, supra* at 541, 656 A.2d at 502.

In determining the constitutionality of the privileged communication statutes, the Superior Court relied upon the analysis developed in *Kyle* and not on *Lloyd,* a 1989 Pennsylvania Supreme Court decision which addressed similar issues but was concerned with a common-law privilege and did not involve an absolute statutory privilege. *Kennedy, supra* at 110-15, 604 A.2d

at 1044-46. In rejecting the precedential value of *Lloyd,* the *Kennedy* court adopted the position taken in another Pennsylvania Supreme Court case, *Wilson/Aultman. Id.* at 111, 604 A.2d at 1044.

In an analogous situation, the Supreme Court examined the effect of the then recently amended absolute statutory protection afforded the sexual assault counselor privilege. *Wilson/Aultman, supra* at 273, 602 A.2d at 1293. Prior to the existence of this statute and its amendment, the relationship between a sexual assault counselor and a victim was only afforded the protection of a privilege that existed at common law; therefore, defendants could gain access to a victim's confidential communications with his/her sexual assault counselor. *Id.* With the passage of the sexual assault counselor privilege, however, the communications between a sexual assault counselor and a victim became absolutely privileged. The *Wilson/Aultman* court did not limit itself to a discussion of the nature of the privilege. It also considered whether this privilege violated the defendant's constitutional rights to confrontation and compulsory process. *Wilson/Aultman, supra* at 278, 602 A.2d at 1296.

In upholding the constitutionality of the statute, the court rejected the applicability of the *Lloyd* case as *Lloyd* was easily distinguishable from the issue confronting the *Wilson/Aultman* court. *Wilson/Aultman, supra* at 281, 602 A.2d at 1297. As the *Wilson/Aultman* court noted, the holding in *Lloyd* did not involve a statutory privilege but one that existed at common law. *Id.* At the time of the *Lloyd* decision communications between a psychiatrist and a patient were not protected by an absolute privilege; therefore, the defendant was allowed to review the records in camera as a privilege at common law will not defeat a defendant's constitutional rights. *Lloyd, supra* at 432, 567 A.2d at 1359-60. When, however, the records in question are those which

are subject to a statutorily-enacted absolute privilege, nondisclosure of those records to the defendant does not violate his constitutional rights to confrontation and compulsory process. *Wilson/Aultman, supra* at 278, 602 A.2d at 1296. As the records in this case were subject to an absolute statutory privilege and in light of the precedential authority regarding this privilege, this court determined that nondisclosure of the victim's therapeutic records to the defendant did not violate defendant's constitutional rights.

The defendant further argues that any privilege of confidentiality that existed between J.C. and her psychiatrist was breached when these records were provided to the Commonwealth. The previously discussed cases are distinguishable from the facts at issue here in that in both *Kyle* and *Kennedy* the prosecution did not possess the victim's records. Several recent cases, however, have dealt with circumstances where the statutorily-protected records were in possession of the prosecution. See *Commonwealth v. Gibbs,* 434 Pa. Super. 280, 642 A.2d. 1132 (1994); *Commonwealth v. Davis,* 437 Pa. Super. 471, 650 A.2d 452 (1994). Both of these cases concerned the sexual assault counselor privilege and not the psychiatrist-patient privilege at issue here. In *Gibbs,* the therapist who prepared the records in question testified during the trial as to the content of those records. *Gibbs, supra* at 286, 642 A.2d at 1135. The court determined that the privilege had been breached by the therapist's testimony, therefore, the protection afforded by the privilege at issue had been diminished substantially. *Id.* at 287, 642 A.2d at 1135. The court concluded that the diminished confidentiality interest resulting from the breach rendered the privilege "more akin to one extant at common law . . . ." *Id.* The court held that in such a situation *Lloyd* was controlling and that the defendant was entitled to view the therapeutic records in camera. *Gibbs, supra* at 288, 642 A.2d at 1136. In *Davis,* the

facts are very similar. The victim's mother signed a written release allowing the prosecution access to the therapeutic records. In addition, a release allowing the therapist to testify at trial was procured. *Davis, supra* at 486-87, 650 A.2d at 460. The court employed the same reasoning as the court in *Gibbs* and held that the defendant must be allowed to view the records in camera. *Id.*

Yet, it has also been held that disclosure of psychiatric records to the prosecution does not automatically constitute a waiver of the psychologist-patient privilege. *Commonwealth v. Dunkle,* 385 Pa. Super. 317, 328, 561 A.2d 5, 10 (1989). In *Dunkle,* the defendant filed a pretrial motion to discover private psychiatric records of the victim which were in possession of the prosecution. *Dunkle, supra* at 326, 561 A.2d at 9. The prosecution turned the records over to the trial court. *Id.* The trial court subsequently conducted an in camera review of the records and supplied the defendant with information deemed to be material to his defense. *Id.* The *Dunkle* court determined that this did not constitute error. *Dunkle, supra* at 330, 561 A.2d at 11. The court stated that although the decision in *Kyle* was buttressed by the fact that the prosecution did not possess the psychiatric records, the linchpin of that decision was that the interests of psychologist-client privilege will prevail over the rights of the defendant. *Id.* Therefore, the fact that the prosecution possessed the victim's file held little sway on the court's decision. Moreover, the Superior Court recognized that an in camera review of the required material minimized any advantage the prosecution might have obtained as the court was under a duty to disclose information which at first may have seemed immaterial but became important as the proceedings progressed. *Id.*

It is easy to fall prey to the "fairness" argument which attends the waiver issue. If the Commonwealth possesses the information why should the defendant

not have access? Before precipitously judging the Commonwealth and attributing nefarious purposes to its possession of the information, it should be observed that the acquisition of such information lends itself to proper discharge of the court's charging function. For example, the psychiatric records of a victim might demonstrate that the victim's allegations are suspect. In such a situation, the Commonwealth's access may spare an innocent party from an unwarranted prosecution.

The record here is silent as to how the psychological records came into the hands of the police and eventually into the hands of the Commonwealth. The absolutely privileged records were not used to initiate the investigation against the defendant and are therapeutic in nature. There is no evidence that the victim consented to the release of these records and there was no testimony presented at trial regarding the content of these records. Even though the prosecution was in possession of these records, they were not introduced to build the Commonwealth's case against the defendant. The defendant requested that the court conduct an in camera review of the records for the limited purpose of ascertaining whether they contained any evidence that would establish whether the memories or perceptions of the victim were skewed or diminished in some fashion. The court determined that the records contained no such evidence. The records have been sealed and are being transmitted to the appellate court to facilitate proper review. Given the absence of any evidence concerning the content of the records at trial and the weight of the privacy interest embodied in the absolute statutory privilege, the court feels that by confining the examination of the requested material to an in camera inspection, it has struck a balance between the defendant's right to compulsory process and confrontation while preserving the sanctity of the victim's unfettered disclosures to her psychiatrist.