604 A.2d 1036

**COMMONWEALTH of Pennsylvania**

v.

**Michael KENNEDY, Philadelphia Department of Human Services, Children and Youth Division, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 18, 1990.

Filed Feb. 20, 1992.

Petition for Allowance of Appeal
March 23, 1992.

96

Stuart Lev, Ardmore, for appellant.

Deborah Fleisher, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and CAVANAUGH, WIEAND, OLSZEWSKI, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

Michael Kennedy appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his conviction for involuntary deviate sexual intercourse, corruption of minors, and indecent assault. *See* 18 Pa.C.S.A. §§ 3123, 6301, 3126. The convictions stem from three incidents of sexual assault by appellant upon his step-daughter. We vacate and remand.

Prior to appellant's trial, defense counsel attempted to discover the victim's file in the possession of Child Protective Services ("CPS"), a division of the Philadelphia Department of Human Services ("DHS")[1], and also sought to review the contents of the child's record of counseling sessions with a licensed psychotherapist. The pre-trial motions judge, the Honorable Joseph T. Murphy, denied defense counsel's request and held that pursuant to our decision in *Commonwealth v. Kyle*, 367 Pa.Super. 484, 533 A.2d 120 (1987), the psychologist-client privilege was absolute, thereby prohibiting review of the psychotherapist's records by the trial court itself. Subsequently, however, Judge Murphy did conduct an *in camera* review of all of

---

1. The Philadelphia City Solicitor has filed an Amicus brief on behalf of the Philadelphia Department of Human Services, Children and Youth Agency.

the victim's records. He determined that the records contained "nothing in them that is material to the defense." The trial court, the Honorable Caroline Engel Temin presiding, also denied appellant's request for access to the victim's records but she too conducted an *in camera* review of both the DHS file and the psychotherapist's records and found "[no] information relevant to the defense."

Following a jury conviction, timely post-verdict motions were filed and denied and thereafter the trial court imposed sentence. Subsequently, appellant filed an appeal to this court. We *sua sponte* certified this appeal for *en banc* review in order to address appellant's contention that his state constitutional rights of confrontation of witnesses and compulsory process, which are guaranteed in Article I, Section 9 of the Pennsylvania Constitution,[2] were violated when defense counsel was denied access to the victim's counselling records and psychotherapist files.[3]

## PART I

WHETHER AN ACCUSED'S STATE CONSTITUTIONAL RIGHTS OF CONFRONTATION AND COMPULSORY PROCESS ARE IMPLICATED WHEN DEFENSE COUNSEL IS DENIED TOTAL ACCESS TO DHS RECORDS COMPILED PURSUANT TO CHILD PROTECTIVE SERVICE LAW

■ When faced with an issue raising both constitutional and nonconstitutional questions, we must make a determi-

2. Article I, section 9 of the Pennsylvania Constitution provides:
 In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

3. Kennedy raises other issues in his appeal which need not be addressed at this time in light of our decision to reverse and remand for a new trial.

nation on non-constitutional grounds if possible and avoid the constitutional question. *In re B.,* 482 Pa. 471, 394 A.2d 419 (1978); *Commonwealth v. Staley,* 476 Pa. 171, 381 A.2d 1280 (1978). In line with this mandate, while we agree with appellant that the trial court's *in camera* review of the CPS files and records was error and therefore reverse and remand for a new trial, we do so on the basis of the language of the Child Protective Service Law ("CPSL"), 11 Pa.S.A. § 2201 *et seq.,* itself[4] and not based on a violation of appellant's constitutional rights as enunciated in our Supreme Court's recent decision in *Commonwealth v. Lloyd,* 523 Pa. 427, 567 A.2d 1357 (1989).

The stated purpose of the CPSL is found at § 2202.

§ 2202. Findings and purpose

Abused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. It is the purpose of this act to encourage more complete reporting of suspected child abuse and to establish in each county a child protective service capable of investigating such reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve and stabilize family life wherever appropriate. However, nothing in this act shall be construed to restrict the generally recognized existing rights of parents to use reasonable supervision and control when raising their children.

The policy underlying this fundamental purpose is to allow for the reporting and investigating of allegations of child abuse and misuse. There is little question that a determination of "abuse founded" or "abuse indicated" may form the basis for a criminal prosecution for child sexual abuse, and therefore there can be little disagreement that

4. 11 Pa.S.A. § 2201 *et seq.* has been repealed by Act of December 19, 1990, and reenacted in substantially the same form at 23 Pa.C.S.A. § 6302 *et seq.* For purposes of this decision we will cite to the prior Act as it governs the case on appeal.

information contained in these files is of critical importance to the accused. *See* Sections 2215(9) and (10). Because of the serious implications of a report of abuse, the act requires that files, reports, and information compiled during an investigation remain confidential. The confidentiality provisions are for the protection of the person reporting the abuse, the alleged victim, *and* the alleged perpetrator; and consistent with the purposes of the Act, these provisions shield the investigation from all other prying eyes.

Pennsylvania's CPSL addresses child abuse committed by parents or paramours of a parent; the hope was that county agencies could work with the victim, perpetrator and other family members toward the goal of maintaining the family while eradicating the abuse. Consequently, the law included stringent safeguards to ensure confidentiality of the information contained in the child abuse registry. However, demands made on the legislature during the past several years have resulted in the creation of exceptions to confidentiality provisions.

Beaty & Wooley, *Child Molester Need Not Apply: A History of Pennsylvania's Child Protective Services Law and Legislative Efforts to Prevent the Hiring of Abusers by Child Care Agencies,* 89 Dick.L.Rev. 669, 669–670 (1985).

■ Section 2215 defined the parameters of the confidentiality under the Act specifically designating to whom information may be disclosed. Pursuant to § 2215(a), certain information contained in the files by CPS may be disclosed to specified agencies and individuals. This subsection, as originally enacted, allowed for only five exceptions. However, as noted in the commentary above, this subsection was amended in 1982 to allow for additional exceptions.[5]

---

**5.** A discussion of these disclosure provisions as implicating a defendant's constitutional rights was contained in the *Ritchie* line of cases. A thorough review of the opinions of this court in *Commonwealth v. Ritchie,* 324 Pa.Super. 557, 472 A.2d 220 (1984); the Pennsylvania Supreme Court in *Ritchie,* 509 Pa. 357, 502 A.2d 148 (1985); and the United States Supreme Court in *Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); reveals that none of the courts' decisions addressed

But while § 2215(a) allows access to file information under specific circumstances to persons and agencies *outside* the circle of privacy created by the Act, § 2215(b) allows almost complete access to file information to any person included *within* that circle of privacy. Under 11 P.S. § 2215(b) it states as follows: "At any time, a subject of a report may receive, upon written request, a copy of all information except that prohibited from being disclosed by Subsection (c), contained in the Statewide central register or in any report filed pursuant to Section 6."

Pursuant to 11 P.S. § 2203, "subject of the report" is defined as "any child reported to the central register of child abuse and his parent, guardian, or other person responsible also named in the report." The Commonwealth, appellant, and Amicus all agree that appellant, as the alleged perpetrator is a subject of the report. We find additional support for this in 11 P.S. § 2214(h) which states:

(h) When a report of suspected child abuse is determined by the appropriate child protective service to be a founded report or an indicated report, the information concerning such report of suspected child abuse shall be expunged forthwith from the pending complaint file and an appropriate entry shall be made in the Statewide central register. Notice of such determination must be given to the subjects of the report other than the abused child along with an explanation of the implications of such a finding. Notice given to subjects of the report shall include notice that their ability to obtain employment in a child care facility or program may be adversely affected by entry of the report in the Statewide central register. The notice shall also inform the subject of the report of his right, at any time, to request the secretary to amend, seal or expunge information contained in the Statewide central register and his right to a hearing if the request is denied. When a report of suspected child abuse is determined by

the validity of disclosure of CPS file materials to a defendant under the provisions of 11 P.S. § 2215(b). Rather, the only subsection analyzed by all three court decisions was § 2215(a).

the appropriate child protective service to be an unfounded report, the information concerning such report of suspected child abuse shall be expunged from the pending complaint file within 12 months of the date the report was received by the department and no information other than that authorized by subsection (k), which shall not include any identifying information on any subject of such report, shall be retained by the department.

DHS, while conceding that § 2215(b) would allow for appellant to make a request for information, contends that this section limits the information to which appellant is entitled. We disagree. Appellant is clearly an individual specified in § 2215(b) to whom information may be released and, with the exception of Subsection (c), which prohibits the release of data which would identify the person who made the report of suspected abuse or any person who cooperated in a subsequent investigation in the event that it would be detrimental to their safety,[6] appellant is entitled to *all* information in the file relative to the investigation.[7]

6. 11 P.S. § 2215(c) specifically provides as follows:
 (c) The release of data that would identify the person who made a report of suspected child abuse or person who cooperated in a subsequent investigation, is hereby prohibited unless the secretary finds that such release will not be detrimental to the safety of such person.

7. Judge Johnson in his Concurring and Dissenting Opinion would argue that the renumbered Act of 1990 has more clearly defined the term "subject of the report" to mean not a person responsible for the abuse but rather a person responsible for the care and well-being of the child. This, he posits, would eliminate the alleged abuser from this definition. We disagree. As noted above, the Pennsylvania Child Protective Service Law was enacted as a response to the problems of parental abuse of children.
 As its name suggests, the CPSL was designed to provide a legal framework which the Pennsylvania Legislature proposed to protect abused children from further abuse while taking steps to rehabilitate the family unit. In contrast to later developments to be discussed in this article, the original CPSL focused on intra-familial relationships.
 Beaty & Wooley, *supra* at 673.
 Logically, if the abuser is not a person responsible for the care and well-being of the child and a member of the existing family unit, then the CPSL would have no application and reporting of the alleged abuse to the law enforcement authorities would be the more appropri-

A careful review of the statutorily mandated contents of CPS files supports this interpretation. Upon a report of abuse, be it oral or written, made pursuant to § 2206, an investigation of the report is initiated which results in reports to the State Department of Public Welfare. Section 2214, titled Record Keeping Duties of the Department, sets out what type of information the Department may maintain in the CPS pending file, and in the Statewide Central Registry. The following subsections are instructive. Subsection (f) states that "No information other than that permitted in Subsection (i) shall be retained in the Statewide central register, the pending complaint file *or otherwise by the department.*" This would appear to apply with equal force to the local child protective service in that under the Act the local agency acts as the investigative arm of the Department of Public Welfare.

Subsection (i) reads as follows:

(i) The Statewide central register shall include and shall be limited to the following information: the names, social security numbers, age and sex of the subjects of the reports; the date or dates and the nature and extent of the alleged instances of suspected child abuse; the home addresses of subjects of the report; the county in which the suspected abuse occurred; family composition; the name and relationship to the abused child of the person or persons responsible for causing the abuse; the source of the report; services planned or provided; whether the report is a founded report, an indicated report; and the progress of any legal proceedings brought on the basis of the report of suspected child abuse.

ate way to proceed. In the present case, Michael Kennedy was married to the child's mother and living within the family unit as a stepfather. All of the allegations of sexual abuse occurred while the parties were living together as a family and while Michael Kennedy was a person responsible for the well-being of the child within that family unit.

While we agree with Judge Johnson that certain language, renumbering and resectioning of the the new Act may vary from that of the Act under consideration by this court, we cannot say that such minor changes vitiate the fundamental purposes of the Act—the protection of the child, and the preservation of the family unit where possible.

Clearly, the information identified in Subsection (i) is a summary of all aspects of the investigation conducted by the child protective service and should mirror the information contained in the child protective service file. Therefore, a practical reading of § 2215(b), which allows appellant to make written request for all information contained in the Statewide central register or in any report filed pursuant to Section 6, allows for disclosure of the information maintained by the local Child Protective Services or the Department of Public Welfare compiled as a result of the investigation. The only exception to disclosure is the name of the reporter of abuse, and only then pursuant to § 2215(c). We find this interpretation comports with the purposes of the Act and recognizes that the alleged abuser, as a subject of the report, is a party protected by its confidentiality provisions.

DHS contends, and the Commonwealth concurs, that other information of a therapeutic or rehabilitative nature may also be contained in the files and should not be subject to review as beyond the purview of § 2215(b). However, if such information not related to that specifically set out under the Act is being maintained in the CPS files by the agency, then it is DHS which is reading the provisions of the statute too broadly and DHS which is, in fact, in violation of the Act.

DHS argues that these other types of information contained in the record are protected from disclosure by DHS regulations or other statutory privileges; specifically, information regarding Family Service Plans, records of service activity or psychological and psychiatric reports concerning the child, parent or caretakers. It is important at this juncture to state that DHS's argument seems to imply that there is one master file which would contain not only the reports and investigation regarding the alleged abuse contemplated by CPSL but would also contain all other contact the agency may have with the child or family before or after the investigation of the abuse. What is of concern to this court is how the agency can make such an

assertion. Under § 2216, the Act establishes that every county children and youth social service agency shall establish a "child protective service" within each agency. Sections 2217 and 2218 contemplate that such child protective service will operate separate from other agencies within the child welfare system and work directly with the Commonwealth Department of Public Welfare in the investigation of allegations of child abuse. Even if Philadelphia has received a waiver of the requirement that a separate service be established pursuant to § 2216(d), such waiver does not relieve it of its responsibility for the maintenance of separate investigatory records.[8] Presumably, any files compiled in compliance with the CPSL would be independent of those files which DHS may maintain in accordance with its responsibilities under the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq.* Once an investigation is completed and a report is made to the Statewide central register, the information is then available to juvenile authorities for other purposes pursuant to specific provisions of the Act. Moreover, DHS cannot claim the statutory protection provided by the confidentiality provisions of the CPSL for any material except that gathered under the Act.

■ Additionally, with regard to any psychological or psychiatric reports, if such reports form the basis for initiating the investigation of abuse or if such reports are a part of the investigation which led to a determination of abuse as founded, then such reports would not be subject to any

---

**8.** Section 2216(e) provides:
(e) The department may waive the requirements that a county establish a separate child protective service upon a showing by the county that:
(1) a separate child protective service (i) would not be conducive to the best interests of all children within the county who need public child welfare services; and (ii) would not be feasible or economical and,
(2) the goals and objectives of the act will continue to be met if a waiver is granted. If the department grants a waiver pursuant to this subsection, the county shall be bound by all other provisions of this act, including requirements concerning the maintenance and disclosure of confidential information and records.

privilege pursuant to § 2204(c).[9] Appellant would be enti-
tled to their disclosure under § 2215(b).[10]

 Having determined that appellant is entitled under
the clear language of § 2215(b) to all information contained
in the CPS investigating file excepting, under limited cir-
cumstances, information which would identify the reporter
of the abuse, we find that the trial court's *in camera*
review was too restrictive. The only question remaining is
whether appellant's state constitutional rights are violated
by any refusal to disclose the identity of the person who
made the report of the abuse.

Pursuant to § 2215(c) "the release of data that would
identify the person who made a report of suspected child
abuse or person who cooperated in a subsequent investiga-
tion, is hereby prohibited unless the secretary finds that
such release will not be. detrimental to the safety of such
person." Undeniably, this provision may act to restrict an
accused's right to gain access to the entire contents of a
CPS file. However, this limited intrusion upon the ac-
cused's state constitutional rights is justified as weighed

9. 11 P.S. § 2204(c) provides:
 (c) Persons required to report under subsection (a) include, but are
 not limited to, any licensed physician, medical examiner, coroner,
 funeral director, dentist, osteopath, optometrist, chiropractor, podi-
 atrist, intern, registered nurse, licensed practical nurse, hospital
 personnel engaged in the admission, examination, care or treatment
 of persons, a Christian Science practitioner, school administrator,
 school teacher, school nurse, social services worker, day care center
 worker or any other child care or foster care worker, mental health
 professional, peace officer or law enforcement official. The privi-
 leged communication between any professional person required to
 report and his patient or client shall not apply to situations involv-
 ing child abuse and shall not constitute grounds for failure to report
 as required by this act.

10. If such records were in fact therapeutic or rehabilitative in nature
 and were not a part of the investigation of the abuse or do not involve
 services planned or contemplated but rather are in possession of DHS
 by reason of its court ordered custody of the child, then such records
 might very well be subject to a privilege; however, DHS does not
 make such an allegation specifically directed to the files in this case.
 Additionally, as indicated above, such records, while appropriately a
 part of the records kept pursuant to the Juvenile Act are not records
 to be maintained in the CPS file.

against the compelling state interest in protecting the safety and well being of those who report abuse. By analogy we look to the line of cases which would allow for the protection of the identity of confidential informants even in the face of a Sixth Amendment challenge.

It has long been the law in this Commonwealth that a defendant who seeks to discover the name of a prosecution confidential informant must make a good faith showing that the informant's testimony would be beneficial to his defense. As set out by this court in *Commonwealth v. Delligatti*, 371 Pa.Super. 315, 324, 538 A.2d 34, 39 (1988), *allocatur denied*, 520 Pa. 595, 552 A.2d 250 (1988):

[i]n *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967) our Supreme Court recognized a qualified privilege with respect to the disclosure of confidential informants. This privilege allows the Commonwealth 'to refrain from disclosing the identity of an informer' and 'limits the prosecution's duty to make available to the defense the names and whereabouts of all material eyewitnesses.' *Id.*, 427 Pa. at ——, 233 A.2d at 285. Before disclosure of an informant's identity is required, the proponent for disclosure must make more than a mere assertion that the identity of an informant might be helpful to the defense. Although exact predictions of what the informant might say cannot be expected, a reasonable possibility that the informant could give testimony that would tend to exonerate the defendant must be suggested. *Commonwealth v. Fleck*, 324 Pa.Super. 227, 471 A.2d 547, 550 (1984). Of fundamental concern in these matters is fairness. 'The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.' *Commonwealth v. Speaks*, 351 Pa.Super. 149, 505 A.2d 310, 315 (1986), *quoting Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957).

*See also Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187 (1986); *Commonwealth v. Herron*, 475 Pa. 461, 380 A.2d 1228 (1977). "Furthermore, a defendant may not

insist upon disclosure of the informant's identity when such disclosure would jeopardize the informant's safety." *Commonwealth v. Bruner,* 388 Pa.Super. 82, 94, 564 A.2d 1277, 1283 (1989) *citing Commonwealth v. Miller, supra.*

In the instant case, the only basis under CPSL for withholding the information regarding the identity of the reporter of the abuse or one participating in the investigation is whether there is a finding that such release will be detrimental to the safety of such person. *See* § 2215(c). It would appear, therefore, that this section grants a qualified privilege to the agency to withhold information and the same balancing test applied in cases involving the disclosure of the identity of a confidential informant would be appropriate instantly. However, to this point, there has been no assertion by the Commonwealth or DHS that § 2215(c) would apply in this case to prohibit disclosure of that information in possession of DHS. If § 2215(c) has any implication in the instant action, then such a challenge should be asserted by DHS or the prosecution on remand. We find any resolution as to whether appellant's state constitutional rights have been violated by this provision to be premature.

## PART II

## WHETHER AN ACCUSED'S STATE CONSTITUTIONAL RIGHTS OF CONFRONTATION AND COMPULSORY PROCESS ARE VIOLATED BY DENIAL OF ACCESS TO ABSOLUTELY PRIVILEGED PSYCHOTHERAPEUTIC FILES NOT IN THE POSSESSION OF THE PROSECUTION

The question of whether appellant's state constitutional rights of confrontation and compulsory process were violated by the denial of access to psychotherapy records requires a very different analysis. In this instance, such reports *are not* a part of the investigatory files of a Commonwealth agency, *are not* in the possession of the prosecution, and,

perhaps most importantly, *are* subject to the protection afforded by a statutorily enacted absolute privilege.[11]

■ Appellant would argue that under the authority of *Commonwealth v. Lloyd, supra,* this statutory privilege cannot withstand constitutional challenge. This expansive interpretation of confrontation and compulsory process rights is advocated without even the slightest showing that information in the files would be helpful to the defense. Applying *Lloyd,* as appellant advocates, would allow a defendant access to privileged records of *any* victim or witness in *any* criminal case. Arguably, it would also entitle the defendant to peruse the entire contents of the Commonwealth's file. This absurd result was not the intention of our supreme court.

In *Lloyd,* our supreme court held as follows:

We now hold under the confrontation clause of the Pennsylvania Constitution, that the appellant in the instant action was denied his right to confrontation when his attorney was denied access to the contents of the victim's psychotherapeutic records. In addition we hold that the right to inspect these records is also mandated by the compulsory process clause of the Pennsylvania Constitution.

*Lloyd,* 523 Pa. at 431, 567 A.2d at 1359. It is undisputed that at the time of the *Lloyd* decision, the records of a psychotherapist and/or psychiatrist were not privileged. The import of the *Lloyd* holding is that under the constitution of this Commonwealth, an accused's rights of confrontation and compulsory process attach pre-trial and, therefore, the defendant Lloyd was entitled to subpoena the *non-*

---

**11.** No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 236, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.
42 Pa.C.S. § 5944, amended December 22, 1989.

*privileged* therapeutic records of a child victim in the possession of a hospital in an effort to prepare for his defense. Because the records were not subject to any privilege, the court was not required to analyze whether the exercise of defendant's rights was subject to any limitation.[12]

The recent supreme court case *Commonwealth v. Wilson/Aultman*, 529 Pa. 268, 602 A.2d 1290, (1992),[13] has eroded the precedential value of the cases relied upon by appellant: *Lloyd, supra,* and *In the Matter of Pittsburgh Action Against Rape (PAAR),* 494 Pa. 15, 428 A.2d 126 (1981). In *Wilson/Aultman,* the supreme court considered the scope and constitutionality of the privilege found at 42 Pa.C.S. § 5945.1 regarding the confidentiality of communications between a victim and rape counselor.[14] Both Wilson and Aultman attempted to subpoena the rape victim's records maintained by the rape crisis center. The trial court quashed the subpoena and the superior court reversed. The Commonwealth appealed to the supreme court arguing that the Legislature promulgated 42 Pa.C.S. § 5945.1 to create an absolute privilege to protect the confidential communications between the rape counselor and the victim, and to abrogate *PAAR.*

The defendants in *Wilson/Aultman* cited *Lloyd, supra,* to support the claim that their state constitutional rights had been violated by the denial of their request for a pretrial inspection of the rape counselor's records. The court,

**12.** The *Lloyd* decision references the *Ritchie* line of cases in holding that the defendant's state constitutional rights were violated by the trial court's nondisclosure, but it does not address the specific issue presented herein.

**13.** Per Nix, C.J., with four Justices joining; Larsen, J., also filed a separate Concurring Opinion joined in by Papadakos, J., and Zappala, J., dissenting. McDermott, J., did not participate.

**14.** The statutory privilege provides, in part:
 (b) Privilege.—
 (1) No sexual assault counselor may, without the written consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding.
42 Pa.C.S. § 5945.1(b)(1) as amended 1990, December 17, P.L. 737, No. 183, § 1, imd. effective.

rejecting defendants' argument based on *Lloyd,* commented:

> The Court voted, however, that the *Lloyd* case, unlike the *Ritchie* case, did not involve a statutory privilege. Rather, the Court in *Lloyd* was concerned with a common law privilege which could not defeat a defendant's constitutional rights. Implicit in the distinction drawn by the *Lloyd* court is the recognition that the existence of a statutory privilege is an indication that the legislature acknowledges the significance of a particular interest and has chosen to protect that interest.... As previously noted, the statutory privilege instantly at issue [42 Pa. C.S. § 5945.1] provides even greater protection than did the statute asserted in the *Ritchie* case. Therefore, an objection based on the protections afforded by the state constitution must also fail.

*Wilson/Aultman,* 529 Pa. at 281–282, 602 A.2d at 1297–98.

Appellant, likewise, relies on *PAAR,* as authority for the proposition that any statutory privilege must yield to the confrontation and compulsory process clauses of the Pennsylvania constitution. The court in *PAAR* recognized only a qualified privilege of confidentiality for rape crisis counselor records, and therefore balanced this qualified privilege against defendant's constitutional rights and established an *in camera* review procedure. It was in response to the supreme court's decision in *PAAR* that the Legislature enacted the absolute privilege for communications between clients and rape crisis counselors at 42 Pa.C.S. § 5945.1.

Examining the Legislature's intent in the enactment of § 5945.1, the supreme court found that § 5945.1 was enacted to reverse the affect of the *PAAR* decision which was seen as "a grave injustice committed against those who, because of lesser economic means, were forced to seek counseling from a public center rather than a private therapist." *Wilson/Aultman,* 529 Pa. at 275, 602 A.2d at 1294. The statute as enacted precludes the release of *any* confidential communications made by the victim, testimonial in nature or in the form of documents, and provides rape crisis

center clients with the same confidentiality received by rape victims who seek private psychotherapeutic treatment. *Id. See supra* note 11. Pertinent to our case, the supreme court also stated:

> It is without question that the privilege would exist if the victims had sought private psychotherapeutic treatment. The legislature has recognized that communications between a licensed psychologist and a patient are confidential. 42 Pa.C.S. § 5944. *See supra* note 3. This statutory privilege has been interpreted as being absolute and has not been outweighed by a defendant's due process rights. *See Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120 (1987), *appeal denied* 518 Pa. 617, 541 A.2d 744 (1988).

*Wilson/Aultman,* 529 Pa. at 276, 602 A.2d at 1295.

◼ Contrary to appellant's assertions, the only authority directly on point as to the issue to be decided today is this court's decision in *Commonwealth v. Kyle, supra.*[15] In *Kyle,* this court was called upon to decide whether an absolute privilege of confidentiality can be subject to balancing against a defendant's right of confrontation. We held that such a balancing would, in effect, destroy the right which the privilege sought to protect. In *Kyle,* the privilege under consideration, 42 Pa.C.S. § 5944, Confidential Communications to Licensed Psychologists, is the same as we address today. Recognizing that the privilege was testimonial in nature, the court in *Kyle* reasoned that the real interest sought to be protected by the privilege was the confidential communications between the client and the psychologist; therefore, the psychologist's records, which memorialized such communications, were subject to the privilege as well. This reasoning recognized that the statutory privilege is based on the state's interest in promoting successful therapeutic treatment and in protecting the fun-

15. Appellant dismisses the holding of *Kyle* as decided under Federal Constitutional Standards and not State Constitutional Standards and, therefore, that *Kyle* is no longer good law after *Lloyd.* Having found no application of *Lloyd* to the issue presented in *Kyle* or in this case, this distinction is not dispositive.

damental right of all of its citizens to the privacy of their most intimate communications.[16] In *Kyle*, this court stated,

Having reviewed the language of the statutory privilege enacted by our legislature and having given consideration to the public policies underlying the absolute privilege as well as the relevant cases in this and other jurisdictions, we find that the interests protected by the privilege are substantial. We are, of course, cognizant of the heavy weight afforded to appellant's interest in disclosure of the victim's file. Nonetheless, in weighing the public interests protected by shielding the file with those advanced by disclosure, we conclude that the balance tips in favor of non-disclosure. Nor do we believe that our decision today will unduly infringe on the rights of the accused. First, we note that as a matter of constitutional law, our courts have upheld testimonial privileges which bar a criminal defendant from obtaining or using confidential communications. *See Washington v. Texas*, 388 U.S. 14, 23 n. 21, 87 S.Ct. 1920, 1925 n. 21, 18 L.Ed.2d 1019 (1967); *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391, 395 (1987). Here, the privilege only limits access to state-

**16.** Specifically, the court stated in *Kyle:*

The statutory privilege for psychologists and clients also serves to protect another interest as well: the privacy interest of the client. Given the extremely personal nature of the information passed and the confidential relationship in which the information was shared, compelled disclosure in court would make public the client's innermost thoughts. This privacy interest is not without significance. Indeed, it has been suggested that the privacy interest of the client may have constitutional underpinnings.

*Kyle,* 367 Pa.Superior Ct. at 496, 533 A.2d at 127.

*Accord, In re B., supra; In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73 (1980); *Commonwealth ex rel. Gorto v. Gorto,* 298 Pa.Super. 509, 444 A.2d 1299 (1982). The *Kyle* court also noted cases from other jurisdictions which have recognized the privacy interest of a patient seeking treatment to be of constitutional dimension. The *Kyle* court then concluded that

We have no doubt that the public interest in protecting a client's privacy interest under such circumstances is particularly important. Whether or not that privacy interest is constitutionally protected, it is still desirable as a matter of social policy to recognize and protect this interest as it is reflected in the statutory psychologist-client privilege.

*Kyle,* 367 Pa.Superior Ct. at 499, 533 A.2d at 128.

ments made during the course of treatment by the psychologist. It does not foreclose all lines of defense questioning. Likewise, the privilege does not unfairly place the defense in a disadvantageous position; like the defense, the prosecution does not have access to the confidential file and, thus, cannot use the information to make its case.

*Kyle*, 367 Pa. at 501, 533 A.2d at 129.

Instantly, the records requested by appellant are not in the possession of the prosecution. They are, therefore, presumably treatment and therapy records. The compelling interest in allowing this rehabilitative process to occur in private is not to build a case for the prosecution, but rather to deal with the trauma of the assault and begin the healing process.

Accordingly, we find the trial court's *in camera* review of these records also constituted error. In *Kyle* the defendant argued that without even an *in camera* inspection of the files by the court, it could not be determined whether any statements made by the victim would be helpful to the defense. This court rejected this argument in the following manner.

Finally, appellant argues that without even an *in camera* inspection of the file by the court, it cannot be determined whether any statements made by the victim would be helpful to the defense. We decline to compromise what we have determined is an absolute privilege from disclosure. As we noted above, the purpose of the psychologist-client privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure. We deem this purpose and the underlying considerations to be of paramount concern. Subjecting the confidential file to *in camera* review by the trial court (as well as the appellate courts and staff members) would jeopardize the treatment process and undermine the public interests supporting the privilege. Simply stated, an absolute priv-

ilege of this type and in these circumstances requires absolute confidentiality.

*Kyle,* 367 Pa. at 504, 533 A.2d at 131.

In *Commonwealth v. Moore,* 526 Pa. 152, 584 A.2d 936 (1991), the supreme court had another opportunity to opine on the subject of privileged records. In that case, the Commonwealth sought disclosure of a defendant's health records within the control of the Allegheny County Health Department so as to ascertain if the defendant was infected with gonorrhea at the time of the alleged rape of the minor complainant who also was diagnosed as suffering from gonorrhea. This court had reversed a trial court ruling and remanded for the entry of an order directing the Health Department to produce the medical records. The supreme court reversed this court and determined that we had misconstrued the Disease Prevention and Control Law and overstated the authority of courts of common pleas to direct disclosure of records, the confidentiality of which is protected by statute. "It should be readily apparent that the general powers of courts do not include the power to order disclosure of materials that the legislature has explicitly directed be kept confidential." *Moore* at 159, 584 A.2d at 940. This preclusion would appear to have equal application to the statutorily protected records of a victim.

Therefore, on the issue of whether appellant's state constitutional rights are violated by denial of access to statutorily protected psychotherapeutic records, we hold that this issue is controlled by this court's decision in *Commonwealth v. Kyle* and relief is denied on that basis.

Based on the foregoing, appellant's judgment of sentence is vacated and the case remanded for a new trial. Upon written request, appellant is to be provided access to the information contained in the CPSL file pursuant to § 2215(b). Appellant is denied access to any psychotherapeutic records which are not contained in the CPSL file or which are not in the possession of the Commonwealth.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

CIRILLO, President Judge, files a concurring opinion in which CAVANAUGH, J., joins.

JOHNSON, J., files a concurring and dissenting opinion.

CIRILLO, President Judge, concurring:

I join in the majority's finding that Kennedy is entitled to all information in the CPS file relative to the investigation, and I join in its decision to vacate the judgment of sentence in this case and to remand for a new trial. I write separately, however, to add that although the majority recognizes that "there can be little disagreement that information contained in [the CPS] files is of critical importance to the accused," its analysis may preclude Kennedy, the subject of a report, from accessing information from the file which may prove most critical to his defense.

As the majority states, a subject may receive all the information in the file except "[t]he release of data that would identify the person who made a report of suspected child abuse or the person who cooperated in a subsequent investigation ..." 11 P.S. § 2215(c) (emphasis added). The majority characterizes this restriction as a "limited intrusion upon the accused's state constitution[al] rights." I disagree. Knowledge of the identity of the reporter is frequently the accused's only hope for defending against such accusations. "When materials gathered become an arrow of inculpation, the person inculpated has a fundamental constitutional right to examine the provenance of the arrow and he who aims it." *Commonwealth v. Ritchie*, 509 Pa. 357, 367, 502 A.2d 148, 153 (1985), *aff'd. in part and rev'd. in part, Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

I acknowledge my colleague's accurate interpretation of the statute, as well as the law of this state as recently defined in the plurality decision of *Commonwealth v. Wilson*, 529 Pa. 268, 602 A.2d 1290 (1992). I cannot agree,

however, with the premise of either the statute or the *Wilson* decision, to wit, that an accused's state constitutional rights must bow to the state's interest in the treatment of victims and the safety and well being of those who report abuse. I am cognizant of the delicate and difficult balancing of significant competing interests—a defendant's fundamental right to a fair trial on one hand, and a victim's right to privacy following a terrible assault on his or her integrity on the other. I recognize the valid purposes for maintaining the confidentiality of these records and understand the importance of encouraging both safety and promptness in the reporting and treatment of such crimes. The defendant's constitutional rights, however, must prevail. The state, by way of its legislature or judiciary, cannot deprive a person of his or her right to constitutional due process.

It is precisely because crimes of this nature are particularly heinous and violent, and because we mete out such severe punishment to those convicted of these crimes, that we must be even more vigilant in preserving the rights of the accused. Passion too easily allows us pause in our observance of the rights of the accused. "The requirement of 'due process' is not a fair weather or timid assurance. It must be respected in periods of calm and in times of trouble[.]" *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 162, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). The concept of procedural due process, though enduring and adaptable to changes in jurisprudential values, cannot be altered to accommodate the crime victim or to prevent the disintegration of the counseling relationship. The ease of accusation and the difficulty of defense in sexual abuse cases heightens our responsibility to abide by this concept and afford the accused fundamental fairness in the context of his defense against criminal charges.

In *Wilson, supra,* our supreme court held that confidential communications between a sexual assault counselor and a victim are absolutely privileged under 42 Pa.C.S. § 5945.1,

rendering meaningless, in my view, the defendant's right to confrontation and compulsory process. Our supreme court reasons that the defendant's right to confrontation "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony," and that the defendant's rights are satisfied "if defense counsel receives wide latitude at trial to question witnesses." *Id.*, 529 Pa. at 279, 602 A.2d at 1296. I must respectfully disagree. In my opinion this view begs the question of whether the defendant's rights are adequately protected and does not comport with the realities of a criminal trial. The effectiveness of confrontation and cross-examination is undermined if pretrial access to relevant information is limited. Defendants gain nothing from receiving "wide latitude" in questioning witnesses if they know nothing of that witness. This type of constitutional protection is transparent. "Denial of access to a witness' prior statements ... imposes a handicap that strikes at the heart of cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. at 71, 107 S.Ct. at 1009 (Brennan, J., dissenting).

I would find that the state's compelling interest in the confidentiality of the counseling relationship must yield to the greater interest in promoting and protecting the defendant's constitutional rights. *See Commonwealth v. Carillion*, 380 Pa.Super. 458, 474, 552 A.2d 279, 287 (1988) (Cirillo, P.J., concurring). I am in agreement with Justice Zappala's dissenting view in *Wilson*. I, too,

> am gravely concerned that we have lost all sense of what our constitutional rights guarantee ... I am sympathetic to the physical and emotional trauma suffered by a rape victim, but I am not not willing to sacrifice the guarantees of our Constitution to assuage the harm.... The Constitution of this Commonwealth is the absolute—a legislative enactment of a statutory privilege is not.

*Wilson*, 529 Pa. at 284–286, 602 A.2d at 1299–1300 (Zappala, J., dissenting).

In summary, defense counsel, should be permitted to review, *in camera,* the victim's entire CPS file and psychotherapy records. Anything less dilutes the search for the truth. *Carillion,* 380 Pa.Super. at 474, 552 A.2d at 287 (Cirillo, P.J., concurring).

CAVANAUGH, J., joins.

JOHNSON, Judge, concurring and dissenting.

I join all of Part II of the Opinion of my distinguished colleague, the Honorable Kate Ford Elliott, which finds no constitutional deprivation to a criminal defendant who is denied access to psychotherapeutic files not in the possession of the prosecution. I am unable to join Part I of that Opinion because I am not satisfied that Michael Kennedy is a "subject of the report" as that term is intended to be understood in the Child Protective Services Law, now 23 Pa.C.S. § 6301 *et seq.*

I agree with the majority that constitutional issues are to be avoided whenever possible; nevertheless, because I am unable to find the language of the Child Protective Services Law dispositive as to the first issue on this appeal, I would reach the constitutional question upon which the first issue is based.

In the case before us, the child victim is under the legal custody of her grandmother, by order of court. Kennedy is the child's stepfather. I do not understand how the defendant, Kennedy, can qualify as a "subject of the report" since he is neither a parent, guardian or "other responsible person." His status as stepfather does not bring him within the intended statutory meaning of a "responsible person." My understanding of the statute in question does not entitle Kennedy to obtain a copy of the victim's file in the possession of the Department of Human Services (DHS). Therefore, I am unable to join the majority's decision to grant to Kennedy a new trial.

The majority states that Section 15(b) of the original Child Protective Services Law (CPSL), "allows almost complete

access to file information to any person included *within* that circle of privacy." As originally enacted, that section provided:

Section 15. Confidentiality of Records.—

. . . .

(b) At any time, a subject of a report may receive, upon written request, a copy of all information except that prohibited from being disclosed by subsection (c), contained in the Statewide central register or in any report filed pursuant to section 6.

Act of November 26, 1975, P.L. 438, No. 124, §§ 1 to 24, 11 P.S. §§ 2201 to 2224, repealed by Act of December 19, 1990, P.L. 1240, No. 206, § 6, now recodified as 23 Pa.C.S. §§ 6301 *et seq.*

The present CPSL has carried this subsection forward in the following form:

§ 6340. **Release of information in confidential reports**

(a) **General rule.**—. . . .

(b) **Release of information to subject child.**—At any time and upon written request, a subject of a report may receive a copy of all information, except that prohibited from being disclosed by subsection (c), contained in the Statewide central register or in any report filed pursuant to section 6313 (relating to reporting procedure).

Act of December 19, 1990, P.L. 1240, No. 206, § 2, 23 Pa.C.S. § 6340(b). The title to subsection (b), "Release of information to subject child," shall not be considered to control but may be used to aid in the construction thereof. 1 Pa.C.S. § 1924. The legislature, in recodifying the CPSL, has clearly indicated that the release of information pursuant to Section 15(b) of the original act is to be limited to the abused child, or those persons responsible for the child's care.

This does not constitute any change in legislative intent or purpose. The majority fastens on Section 14(h) of the Act, 11 P.S. § 2214(h), now 23 Pa.C.S. § 6338(a) and (b) as "additional support" for the proposition that the person

responsible for causing the abuse is a "subject of the report." I cannot agree. The notice provision contained in that section would be equally applicable to a parent, guardian or other responsible person. I find it unpersuasive to suggest that the Legislature attempted, through the "notice" amendment, to enlarge the statutory definition of the term "subject of the report" as found within the definitional section or within section 15(b).

The confusion, if any, arises from the use of the word "responsible" in two different ways within the Act. For example, in Section 6, subsection (c), the word is first used to describe the person who is "responsible for [the abused child's] care." Later in the same subsection, the word is used to describe the person "responsible for causing the suspected abuse." This may, on occasion, be one and the same person, where the parent or guardian to whom the child's care is entrusted violates his responsibility and abuses the child.

That the Legislature knowingly employed the term "responsible" in different contexts within the Act is evident. As re-enacted through Act 206 of 1990, the reporting procedure has now been more clearly outlined, with different pieces of information for inclusion in the report assigned different numbered subparagraphs. Thus, Section 6313(c), which replaces 11 P.S. § 2206(c) and the original Section 6 of the Act, now provides as follows:

§ 6313. Reporting procedure

. . . .

(c) Written reports.—Written reports from persons required to report under section 6311 shall be made to the appropriate child protective service in a manner and on forms the department prescribes by regulation. The written reports shall include the following information if available:

(1) The names and addresses of *the child and the parents or other person responsible for the care of the child* if known.

. . . .

*(5) The name of the person or persons responsible for causing the suspected abuse, if known* (emphasis added).

Under the present statute, there can be no doubt that "the person responsible for the care of the child," as referred to in § 6313(c)(1), is intended by our legislature to be understood separate and apart from "the person.... responsible for causing the suspected abuse," referred to in § 6313(c)(5).

Pursuant to § 15(b) of the original Act, the information within the file is available to the subject of the report. It is because the term "subject of the report" is defined to include the "person responsible," that it is necessary to determine the scope of the term "person responsible" within the definitional scheme. The majority concludes that the abuser, through his or her "status" as the abuser, is the "subject of the report" and thus is entitled to receive a copy of the information contained within the report. It is my disagreement with that conclusion that moves me to dissent.

As originally enacted, Section 3 defined the term "subject of the report," and in my opinion, this definition limited the scope of the term to two people: the abused child *and* a person legally responsible for the care of that child, if named in the report. I find the legislature's selection of syntax significant; the "subject of the report" includes the child *and* a "parent, guardian *or* other responsible person." The latter three persons are identified disjunctively. To infer that the term "responsible person" refers to the abuser would mean that the second element of the definition is *either* the parent, the guardian, *or* the abuser. This illogical result is necessary to the result reached by the majority. Rather, I conclude *instead* that the legislature intended to make an exhaustive reference to the *person(s) who could be responsible for the care of the child.* Accordingly, the abuser is not included within the term "subject of the report" merely by virtue of his or her status as the abuser.

If one accepts this interpretation of § 3, it seems certain that, in making the information within the file available to the "subject of the report," 23 Pa.C.S. § 15(b) was not intended to make the same available to abusers merely by virtue of their status.

Subsequent amendments to the Act, in my judgment, have fortified this conclusion. For example, in 1982, the legislature removed the word "legally" from between the words "person" and "responsible" in defining "subject of the report" in former 11 P.S. § 2203. Thus, the provision was amended to read:

> "Subject of the report" means any child reported to the central register of child abuse and a parent, guardian or other person responsible also named in the report.

Act of June 10, 1982, P.L. 460, No. 136, § 3. The Legislature might have amended the statute so as to eliminate the possible suggestion that the term "legally responsible" was intended to mean "responsible for the abuse."

In its most recent codification, the definition of "subject of the report" appears as follows:

> **"Subject of the Report."** Any child reported to the central register of child abuse and a parent, guardian or other responsible person also named in the report.

23 Pa.C.S. § 6303 (formerly 11 P.S. § 2203, Section 3 of the Act). The term "person responsible" has been replaced by "responsible person." Thus, I find, the statutory definition continues to vary further from the interpretation adopted by the majority.

Kennedy does not make an independent analysis as to the meaning to be given to the term "subject of the report". This is understandable; the issue for which *en banc* review was granted was the constitutional question involved. Thus, the entire focus of his argument is on constitutional deprivation.

In summary, I am unable to subscribe to the majority's interpretation of the CPSL and I cannot conclude, on the basis offered by the majority, that the trial court erred by

denying the defendant and his counsel access to the DHS files. Nor is my conclusion altered by the parties' willingness to concede what I believe to be an erroneous interpretation of the statute. Because my understanding of the CPSL does not dispose of the issue presented, I would reach that issue on its merits.

Kennedy argues that his counsel must be allowed the opportunity to personally review the DHS records. In *Commonwealth v. Ritchie*, 509 Pa. 357, 502 A.2d 148 (1984) *aff'd in part, reversed in part, sub nom. Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the respondent, charged with various sexual offenses against his daughter, sought CYS files which he alleged contained exculpatory evidence. The trial judge refused to order CYS to disclose the files. This court held that, under the Sixth Amendment, the defendant was entitled to any verbatim statements made by the victim regarding abuse. We remanded the case for a determination of whether such statements existed within the file and, if so, whether denying them to defense counsel had constituted harmless error. Our Supreme Court also remanded, but with instructions that the Sixth Amendment entitled defense counsel to review the entire file. The United States Supreme Court granted certiorari.

On review, the Court affirmed our Supreme Court's decision to remand for further proceedings. The Court held, however, that the defendant's rights under the U.S. Constitution were sufficiently protected by an *in camera* review of the files sought. The Court stated:

Ritchie is entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial. If it does, he must be given a new trial. If the records maintained by CYS contain no such information, or if the nondisclosure was harmless beyond a reasonable doubt, the lower court will be free to reinstate the conviction.

*Ritchie,* 480 U.S. at 58, 107 S.Ct. at 1002, 94 L.Ed.2d at 58 (footnote omitted.)

Guided by *Ritchie,* our Court has approved the procedure employed by the trial court in this case. In *Commonwealth v. Higby,* 384 Pa.Super. 619, 559 A.2d 939 (1989) *alloc. den.* 525 Pa. 578, 575 A.2d 109 (1990), this Court stated:

> Initially, Appellant asserts that the trial court erred in refusing his pre-trial request for discovery. Appellant filed motions for inspection of both Children's Services Records and Rape Crises Records. Following the dictates of the United States Supreme Court's pronouncement in *Commonwealth v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the trial court conducted an *in camera* inspection of the Children's Services Records. The trial court refused to grant Appellant access to these records based upon its finding that the records contained "no material evidence of an exculpatory nature which would be subject to disclosure." Trial Court Opinion at 3. Since the Supreme Court required "divulgence when a court of competent jurisdiction determines that the material for which production is sought is essential to the accused's defense," *Commonwealth v. Carillion,* [380 Pa.Super. 458] 552 A.2d 279 (1988), we conclude the trial court complied with the law with respect to the Children's Services Records.

*Higby,* 384 Pa.Super. at 621, 559 A.2d at 939–40.

In *Commonwealth v. Dunkle,* 385 Pa.Super. 317, 561 A.2d 5 (1989), *rev'd on other grounds,* 529 Pa. 168, 602 A.2d 830 (1992) our court found no violation of the Sixth Amendment under circumstances similar to those presented here. We determined that *Ritchie* had been followed where the trial court ordered the Commonwealth, in possession of CYS files, to produce those records for an *in camera* review for any material that was properly discoverable. After reviewing the files, the trial court provided Dunkle with various statements made by the victim. The court also instructed Dunkle that more information could be released

if Dunkle presented a colorable argument that such information existed, was discoverable, and was contained within the records.

In the instant case, Kennedy recognizes that the procedure employed by the trial court complies with the requirements of the federal constitution, but he bases his argument on the conclusion that Article I, § 9 of the Pennsylvania Constitution provides a defendant with greater rights, including the right to review the files which are the subject of a statute requiring confidentiality. In support, Kennedy directs this court to *Commonwealth v. Lloyd*, 523 Pa. 427, 567 A.2d 1357 (1989). There, our supreme court held that an *in camera* inspection of psychiatric records by the trial court was insufficient to satisfy a defendant's rights under the confrontation and compulsory process clauses of the Pennsylvania Constitution. The *Lloyd* court noted, however, that the issue before it did "not involve a request to discover statutorily protected state maintained records...." 523 Pa. at 431, 567 A.2d at 1359. *Cf. Commonwealth v. Wilson*, 529 Pa. 268, 281–282, 602 A.2d 1290, 1297–98 (1992). As the majority observes in Part II of its analysis, no statutory privilege then existed for communications between a psychiatrist and patient. Therefore, *Lloyd* does not control where, as here, a defendant seeks production of records which are the subject of a statutory grant of confidentiality.

Kennedy cites to no other authority for the proposition that defense counsel is entitled to review files which are the subject of a statutory protection against disclosure, nor has my research revealed any. Guided by *Ritchie*, and our decisions in *Dunkle* and *Higby*, I determine that both Judge Murphy, as the pre-trial motions judge, and Judge Temin, presiding at trial, properly conducted an *in camera* review of the DHS file. Upon the trial judges determining that the file contained "no information relevant to the defense," I conclude that court acted properly in denying Kennedy access to the contents of these files.

128

Provisions of the Pennsylvania Constitution have often been read to provide greater protection of an accused's rights than the analogous provisions of the federal constitution. Nonetheless, until our Supreme Court addresses the issue of whether a defendant is guaranteed greater access to statutorily protected records under the confrontation clause and compulsory process clause of the Pennsylvania Constitution than under the Federal Constitution, I decline to extend the Pennsylvania Constitution in the fashion Kennedy seeks here.

For these reasons, I conclude that Kennedy's rights under the confrontation and compulsory process clauses of the Pennsylvania Constitution have been adequately protected, and I find no error on this issue. Also, I have reviewed Kennedy's remaining allegations of error and I conclude that they too are without merit. Accordingly, I would affirm judgment of sentence.